**Lisa K. SURRETT, Plaintiff,**

v.

**TIG PREMIER INS. CO., Defendant.**

**Civ. A. No. 93–D–1316–N.**

United States District Court,
M.D. Alabama,
Northern Division.

Oct. 21, 1994.

---

Charles H. Morris, III, Selma, AL, for plaintiff.

James A. Byram, Jr., Balch & Bingham, Montgomery, AL, for defendant.

## MEMORANDUM OPINION

DE MENT, District Judge.

Before the court is the defendant TIG Premier Insurance Co.'s motion for summary judgment filed April 28, 1994. In support of its motion, the defendant simultaneously filed a brief based upon case law, statutory authority, the pleadings, the plaintiff's deposition testimony and an affidavit. On June 30, 1994, the plaintiff filed a brief in opposition, extracting her arguments from case law, the Alabama Code, depositions, affidavits, the pleadings and discovery. The defendant filed a reply memorandum on June 11, 1994. After careful consideration of the arguments of counsel, the relevant case law and the record as a whole, the court finds that the motion is due to be granted.

1. Defendant TIG Premier Insurance Co. is a California corporation with its principal place of business also in California. The plaintiff is a resident of Alabama.

2. Barry Surrett has since dismissed his claims and is no longer a party to this lawsuit.

## JURISDICTION

This court has subject-matter jurisdiction under the diversity jurisdiction statute, 28 U.S.C. § 1332, as there exists complete diversity between the parties and the amount in controversy exceeds $50,000.00.[1] Venue is proper under 28 U.S.C. § 1391, and the parties do not contest personal jurisdiction.

## PROCEDURAL HISTORY

Lisa Surrett and her husband Barry Surrett originally filed this action on September 15, 1993, in the Circuit Court for Montgomery County, Alabama.[2] The Surretts sued Transamerica Premier Insurance Co.[3] (hereafter "TIG"), Toyota Motor Credit Corp. (hereafter "TMC"), Scott France and World Omni Financial Corp., alleging that they fraudulently concealed the scope of charges included in a collateral single insurance policy between TMC and TIG. The defendants removed this action to the United States District Court for the Middle District of Alabama, Northern Division. Subsequently, the claims against TMC, Scott France and World Omni Financial Corp. were settled; thus, these defendants are no longer involved in this action.

## FACTS

The court, viewing the evidence in a light most favorable to Lisa Surrett, considers the following facts controlling in this case:

The plaintiff brought this lawsuit for compensatory and punitive damages, alleging that the defendant suppressed material facts of an insurance policy in violation of Ala.Code § 6-5-102 (1975). On January 3, 1986, the plaintiff purchased a new car from Toyota of Selma, Inc., Selma, Alabama, and financed it through TMC. The amount financed totalled $10,760.94, payable over five years with monthly payments of $258.94. The purchase contract contains a provision entitled "Prop-

3. During the course of this litigation, Transamerica Premier Insurance Co. changed its corporate name to TIG Premier Insurance Co.

erty Insurance." This section states in pertinent part as follows: "If you do not obtain the insurance or pay the premiums we may do so for you or we may purchase property damage insurance covering only our interest in the collateral." Pl.'s Compl. at ¶ 5. The plaintiff testified at her deposition that she understood that she was to maintain insurance on the car. Pl.'s Dep. at 24–25.

Subsequently, the plaintiff allowed her insurance coverage to lapse on two separate occasions. The first occasion occurred shortly after buying the car. Specifically, within three weeks of purchasing the car, her insurance company, for reasons not contained within the record, elected not to renew coverage on the car after February 8, 1986. Surrett allowed the coverage to lapse and failed to obtain insurance through a different company. TMC sent Surrett a letter dated May 8, 1986, stating that it had not received a copy of her insurance policy covering the collateral on the loan. The letter continued by stating:

> If confirmation of insurance is not received within 15 days from the date of this notice, we may, at our election, procure a limited policy which may not fully protect your interest at the time of claim settlement. Please note that we are not obligated to apply for or procure this insurance, but if we do so[,] the premium will be $5,281.00 for 59 months coverage beginning 02/04/86.
>
> The premiums plus interest computed on the premium amount will be added to your existing loan. . . .

Pl.'s Resp. to Def.'s Mot.Summ.J., Ex. 5. Surrett does not recall receiving or reading this letter.

Because the plaintiff had not acquired any insurance, TMC took out a collateral single interest insurance policy to protect its financial interest in the car. This policy was with the defendant, TIG. TIG, issued a certificate of insurance, No. 8158207, charging premiums of $5,281.00. TIG mailed the plaintiff a copy of this certificate of insurance, which the plaintiff received.[4] TIG, however, did

not send her a copy of the master insurance policy.

The certificate's declarations state that "[t]he described **collateral** is insured under a Master Policy of Insurance issued to the **Lender**. This insurance **protects the interest of the Lender** in the **collateral.** Under this Certificate, no coverage is provided for **your** interest or equity in the collateral." Pl.'s Resp. to Def.'s Mot.Summ.J., Ex. 3 (emphasis original). Item 5 of the declarations states that: **"THIS CERTIFICATE COVERS** DIRECT AND ACCIDENTAL LOSS OR DAMAGE TO THE COLLATERAL AS SET FORTH ON THE FOLLOWING PAGE." *Id.* (emphasis original). Furthermore, the following page provides that " . . . this is a condensed version of the policy issued to the **lender.** It DOES NOT include all the limitations and terms of the **lender's** policy. **You** can look at the policy at the **lender's** address shown in Item 2 of the Declarations." *Id.* (emphasis original).

The master policy, naming TMC as the insured, provides that TIG will reimburse TMC up to $500.00 for costs incurred for taking possession of the collateral subject to a mechanics lien and up to $300.00 for repossession expenses. This coverage is in addition to "direct and accidental physical loss to the collateral." Def's Mot.Summ.J., Ex. 1. The premiums charged for this policy included coverage for mechanics liens and repossession expenses but did not so state in the certificate of insurance or declarations.

Surrett also received a payment coupon book from TMC, which added charges to her monthly payments for the collateral single interest insurance. The charges increased her monthly payments to more than $300.00 a month.

On December 9, 1986, Surrett did obtain car insurance for a six-month term from Progressive Specialty Insurance Co. The policy named TMC as the lost payee. Thereafter, TMC canceled the collateral single interest insurance procured through TIG. This cancellation was effective December 9, 1986. TIG charged TMC $1,637.00 for cover-

---

4. The plaintiff stated at her deposition that she does not remember if she read this certificate. Pl.'s Dep. at 37.

age between February 4, 1986, and December 9, 1986. The plaintiff contends that she, in fact, paid this amount. Progressive also renewed the plaintiff's policy for an additional six months, thus, providing coverage until December 9, 1987. However, because Surrett only paid a portion of the premium for this second six-month term, Progressive canceled her policy effective August 26, 1987.

Once again, TMC sent Surrett a letter stating that it had not received a copy of her insurance policy covering the collateral on the loan. This letter stated that if TMC elected to procure insurance protecting its interest, the premiums would total $3,844.00 for 36 months and coverage would begin August 8, 1987. The letter also stated that the charges would be added pro rata to her monthly payment. When the plaintiff failed to respond, TMC again procured collateral single interest insurance through TIG, and TIG issued a certificate of insurance, No. 1121318, charging premiums of $3,844.00 to TMC. The plaintiff also received from TIG a copy of the certificate of insurance but not a copy of the master policy.

However, before receiving this second certificate, Surrett, after consulting with her bank, purchased a used car and financed it through her bank in Selma. In November, she voluntarily surrendered the Toyota to TMC. Surrett received notice of repossession and her right to redeem by paying TMC the balance owed, which was $11,476.33. After repossessing the car, TMC canceled the insurance policy with TIG and was not charged a premium. TMC sold the Toyota for $5,900.00. The balance still owed by the plaintiff totalled $5,194.16, which included repossession expenses. Thereafter, a collection agency unsuccessfully attempted to collect this deficiency from the plaintiff.

The plaintiff contends that if she had known of the additional coverage for the mechanics lien and repossession expenses, she would have "surrendered the car or obtained other insurance." Order on Pretrial Hr'g at 2. She also contends that these optional charges, which were cited in the master policy, were excessive and violated § 5–19–20 of the Alabama Code. Section (a) states in part that "[w]ith respect to any credit transaction, the creditor shall not require any insurance other than insurance against loss of or damage to any property in which the creditor is given a security interest or insurance insuring the lien of the creditor on the property which is collateral for said transaction." Ala.Code § 5–19–20(a) (1975).

The plaintiff also contends that the Alabama Department of Insurance issued a bulletin on August 5, 1992, condemning the practice of insurance companies which provide excessive coverage. This bulletin provided in part that "[t]he practice of rolling on excessive, unneeded coverage causes the borrower to pay excessive insurance rates and inhibits the borrower's ability to pay for this loan." Pl.'s Compl. at ¶ 11. The plaintiff asserts that as of March 5, 1993, TIG had not complied with this bulletin and had not responded when the department inquired as to whether TIG passed on to the consumer the premiums for optional coverage.

The plaintiff contends that she suffered actual damages as a result of the defendant's failure to disclose all the terms and conditions of its contract with TMC. Specifically, she claims that bill collectors harassed her for payment of the force-placed premium charges; that her credit rating was sabotaged; and that she was denied credit because of her blemished credit report.

## SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising from it in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Supreme Court has stated:

[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that par-

ty's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

In further elaboration on the summary judgment standard, the court has said that "there is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). Summary judgment is improper "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. at 2510. *See Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir.1989).

## DISCUSSION

### *Fraudulent Suppression of Material Facts*

Section 6–5–102 provides that "[s]uppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case." Ala.Code § 6–5–102 (1975). Thus, to withstand the defendant's motion for summary judgment on the claim of fraudulent suppression, the plaintiff must offer sufficient evidence 1) that because of either a confidential relationship between the defendant and her or due to the circumstances of the case, TIG had a duty to disclose in the certificates of insurance that charges for mechanics liens and repossession expenses were included in the premiums; 2) that these omitted terms constitute material

facts; 3) that TIG's failure to disclose such facts induced the plaintiff to act, i.e., that TIG misled the plaintiff and caused her to justifiably rely; and 4) that the plaintiff suffered actual damage. *See Hardy v. Blue Cross and Blue Shield of Alabama*, 585 So.2d 29, 32 (Ala.1991).

### *Duty to Disclose*

In determining whether a duty to disclose exists under § 6–5–102, the factors to be weighed are "... the relation of the parties, the value of the particular fact suppressed, the relative knowledge of the parties, and other circumstances." *Oxford Furn. Co. v. Drexel Heritage Furnishings, Inc.*, 984 F.2d 1118, 1124 (11th Cir.1993) (citation omitted). While this issue is generally for the jury to decide, *id.*, where the plaintiff presents no proof of a duty to disclose, summary judgment is appropriate. *See Norman v. Amoco Oil Co.*, 558 So.2d 903 (Ala.1990) (holding that the plaintiff, a wholesaler of Amoco's products, did not produce any evidence that Amoco had a duty to disclose the details of a profitability index where the plaintiff had worked for the defendant for twelve years and had notable experience in this area).[5] Furthermore, silence does not equal fraud under § 6–5–102 "'... unless an obligation to communicate a material fact exists.'" *Herring v. Parkman*, 631 So.2d 996, 1001 (Ala.1994) (citing *Trio Broadcasters, Inc. v. Ward*, 495 So.2d 621, 623 (Ala.1986)).

The defendant, in support of its proposition that no duty to disclose existed, cites *McGowan v. Chrysler Corp.*, 631 So.2d 842 (Ala.1994). In this case, the plaintiff purchased a new automobile from Heritage Chrysler–Plymouth–Dodge. *Id.* at 844. The dealer represented to the plaintiff that the Chrysler Fifth Avenue was a "top-of-the-line, smooth-riding luxury car." *Id.* Chrysler, in its advertisements, also conveyed a similar message. *Id.* Subsequently, the car began to vibrate at speeds above 60 mph, and the plaintiff also encountered problems with the brake system and engine. *Id.* The plaintiff later discovered that Chrysler knew that con-

---

5. Coincidentally, the undersigned is well aware of the applicability of this case, as the under-signed represented the appellant in this action.

sumers had expressed similar problems with this particular model. *Id.* Moreover, Chrysler had furnished dealers with "kits" to repair these malfunctions when the cars were brought in under warranty, thus, placing the dealers on notice of such problems. *Id.* The plaintiff sued both the dealership and the manufacturer, alleging several state law claims including fraudulent suppression. *Id.* The Supreme Court of Alabama, in affirming the trial court's entry of summary judgment on the fraudulent suppression claim, held that the plaintiff had failed to produce any evidence that a confidential relationship existed between the plaintiff and either the dealer or the manufacturer. Likewise, the record was devoid of any evidence of special circumstances between the plaintiff and the defendants justifying a duty to disclose.[6] *Id.* at 847–48.

■ The court finds that when viewing all the evidence in a light most favorable to Surrett, she has produced no evidence of either a confidential relationship between her and the defendant or special circumstances giving rise to a duty to disclose. While a legal duty to make certain disclosures may arise from the terms of a contract between the parties, there is no evidence of privity of contract between Surrett and TIG. Moreover, the plaintiff did not assist TIG and TMC in negotiating the terms of the contract. TIG issued the collateral single interest insurance policy, naming TIG as the insured. TIG, in sending the plaintiff a copy of the certificate of insurance, was simply alerting the plaintiff that the policy did not provide any type of coverage for her benefit. Furthermore, TMC, not the plaintiff, paid the premiums owed on the insurance, and

TMC, not TIG, was responsible for collecting payment from the borrowers. Peter Friday's Dep. at 33. From aught that appears, the defendant only had communications with TMC concerning the formation of the contract.

■ Moreover, there is no evidence that TIG was acting for the benefit of the plaintiff. A party seeking relief as a third-party beneficiary of a contract must show that the contract is "intended for his [or her] direct, as opposed to his [or her] incidental, benefit." *McGowan,* 631 So.2d at 848 (citing *Mills v. Welk,* 470 So.2d 1226, 1228 (Ala.1985)). Furthermore, to prevail on this theory, the plaintiff must show: "1) that the contracting parties intended, at the time the contract was created, to bestow a direct benefit upon a third party; 2) that the complainant was the intended beneficiary of the contract; and 3) that the contract was breached." *Id.* (citing *Sheetz, Aiken & Aiken, Inc. v. Spann, Hall, Ritchie, Inc.,* 512 So.2d 99, 101–102 (Ala. 1987)). The record is devoid of any proof that the plaintiff was a beneficiary of the contract. Rather, the evidence is to the contrary. The certificate indicates that all payments for loss will paid to the lender. Furthermore, this policy, by its very nature, was designed to protect TMC's financial interest in the car, not the plaintiff's. The certificate of insurance expressly states that the policy "... protects the interest of the Lender in the collateral. Under this Certificate, no coverage is provided for your interest or equity in the collateral." Pl.'s Resp. to Def.'s Mot.Summ.J., Ex. 3.

While a duty to disclose is not limited to contractual relations between parties,[7] there

---

6. With all deference to the Supreme Court of Alabama, this court does not agree with *McGowan.* In viewing the facts as a whole—the dealer/customer relationship, the representations made by the dealer and manufacturer, the superior knowledge of the dealer and manufacturer, the potential danger of the recurring defects, as well as similar complaints from other buyers—, this court would have held that special circumstances existed. At the very least, Chrysler should have disseminated a notice to the purchasers of this model stating that the some of the automobile's parts were defective and created a potentially dangerous situation, thereafter, providing notice that local dealers possessed kits to

repair the malfunctions. However, trial courts "find" and cannot "hold." Furthermore, the Supreme Court of the United States in *Erie Railroad v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), dictated that a federal trial court, when exercising diversity jurisdiction, must apply the substantive law of the state *in* which it is sitting.

7. See *First Virginia Bankshares v. Benson,* 559 F.2d 1307 (5th Cir.1977), *cert. denied,* 435 U.S. 952, 98 S.Ct. 1580, 55 L.Ed.2d 802 (1978) (stating that the relationships wherein a duty to disclose has been found indicate that the Alabama courts give little attention to the designation of

simply is no evidence in the record creating a genuine issue of a material fact that any type of confidential relationship existed or that the particular facts and circumstances of this case gave rise to such a duty. The plaintiff argues that because the defendant had superior knowledge as to the terms of the master insurance policy between TIG and TMC, TIG had a duty to disclose those terms to her. This argument must fail. Superior knowledge of a fact, without more, does not impose upon a party a legal duty to disclose such information. *See Barnes v. Liberty Mut. Ins. Co.*, 468 So.2d 124, 126 (Ala.1985). In *McGowan*, for example, both Chrysler and the dealer clearly had superior knowledge that the Chrysler Fifth Avenue model was manufactured with defective parts. However, according to the Supreme Court of Alabama, plaintiff McGowan failed to produce evidence of a legal duty to disclose.

Moreover, the plaintiff's pleadings, arguments and case citations fail to establish any evidence of a duty to disclose, which is an essential element of her case. *See Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552–53. The plaintiff cites two cases involving a duty to disclose, neither of which the court finds relevant. *First Alabama v. First State Ins. Co.*, 899 F.2d 1045 (11th Cir.1990), involves an insurance broker's duty to disclose to its client crucial facts pertaining to coverage. Here, there is no such exclusive relationship between the plaintiff and the defendant.

The second case cited by the plaintiff is *Baker v. Bennett*, 603 So.2d 928 (Ala.1992), *cert. denied*, ── U.S. ──, 113 S.Ct. 1260, 122 L.Ed.2d 658 (1993). In *Baker*, the plaintiffs, relying on the advice of their accountant (Johnston), invested in computer-leasing as a tax shelter. *Id.* at 931. The defendant Baker, who was a tax attorney, was the sole shareholder of an intermediary company involved in this complex leasing arrangement, which resulted in substantial tax savings. *Id.*

The IRS informed the plaintiffs that the leasing venture was a tax sham. *Id.* at 932. The IRS, after auditing the plaintiffs, assessed them back taxes totalling more than $1,000,000.00. *Id.* at 933. At trial the jury returned a verdict against Baker, and Baker appealed the trial court's denial of his motion for a directed verdict on the fraud counts, including fraudulent suppression. *Id.* at 934. The Supreme Court of Alabama, while finding no confidential relationship between the parties, held that the in view of the particular facts of the case, the trial court did not err in allowing the fraudulent suppression issue to go to the jury. *Id.* at 935. The court stated that the plaintiffs, who were hesitant about investing, briefly talked with the defendant by telephone, and he told them that the computer leasing was a "'good tax shelter,' but did not reveal any of the underlying facts of the operation." *Id.* The opinion continued by stating:

> It is undisputed that Baker had superior knowledge of the actual value of the computer and of the role of Coleman leasing in the arrangement and also knew that these factors could be critical if the IRS questioned the tax shelter. It is likewise undisputed that the Bennetts relied on Baker and Johnston's expertise in entering the venture.

*Id.* at 935. The plaintiff, who set forth a quote from this case, failed to point out how the facts of *Bennett* relate to her case. The court finds no significant similarities.

Neither has the plaintiff provided the court with a statute imposing a legal duty on the insurer to deliver a copy of the policy to the plaintiff. While insurers are required to provide the named insured or "the person entitled thereto" with a copy of the policy, the plaintiff has provided no facts which qualify her as either an insured or an entitled person.[8] *See* Ala.Code § 27–14–19 (1986).

the relationship, but instead look to the relative bargaining position of the parties).

8. The court notes that pending before the Supreme Court of Alabama is this court's certified question of law pertaining to § 27–14–19. The issue of law involves whether an insurer is estopped from asserting the limitations and exclu- sions of a policy if it fails to deliver the **insured** a copy of the policy in compliance with § 27–14–19. In that breach of contract case, the insurer sent the **insured,** in lieu of the actual policy, a certificate of insurance setting forth the general coverage without enumerating the limitations and exclusions. The facts of the present case, however, are distinguishable due to the court's

As discussed above, the plaintiff is not the insured nor is she a third-party beneficiary. Although the plaintiff may have paid the amount owed on the certificate of insurance, she paid the amount to TMC, who had already paid the premium to TIG.

The court finds that the plaintiff has failed to assert any facts that would cause a reasonable jury to find that the defendant had a duty to disclose to the plaintiff all the terms of the policy between it and TMC. Because no genuine issue of material fact exists as to this essential element of the plaintiff's claim, summary judgment is due to be granted in favor of the defendant.[9]

## CONCLUSION

For the above reasons, judgment is due to be entered in favor of the defendant TIG Premier Insurance Co. and against the plaintiff Lisa K. Surrett. A judgment in accordance with this memorandum opinion shall be entered separately.

finding that the plaintiff does not fall within the purview of this statute.

9. Because it is clear that the defendant is entitled to summary judgment on the fraudulent suppression claim, the court need not address the defendant's statute of limitations defense.