[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 774 
 On Application for Rehearing[1]
[1] We note that only Adamson Ford filed a timely Application for Rehearing.
This court's original opinion, dated June 21, 1996, is withdrawn, and the following is substituted therefor:
Robert Bramlett, Sr., appeals the entry of summary judgment for Ford Motor Credit Company ("FMCC") and Adamson Ford, Inc. ("Adamson") on his claim for damages arising out of his purchase and financing of an automobile. Bramlett alleged fraud by suppression and misrepresentation, conspiracy to defraud, breach of contract, unconscionability, and outrage. Bramlett appealed the summary judgment as to his claims of suppression, misrepresentation, civil conspiracy, and unconscionability to the Supreme Court. The Supreme Court transferred the appeal to this court pursuant to Ala. Code 1975, § 12-2-7.
 I. Standard of Review
The standard of review applicable to a summary judgment is the same as the standard for granting the motion, that is, we must determine whether there was a genuine issue of material fact and, if not, whether the movant was entitled to a judgment as a matter of law. Berner v. Caldwell, 543 So.2d 686 (Ala. 1989). Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Wilson v. Brown, 496 So.2d 756, 758 (Ala. 1986);Harrell v. Reynolds Metals Co., 495 So.2d 1381 (Ala. 1986). See also Hanners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala. 1990).
Ala. Code 1975, § 12-21-12 mandates that the nonmovant meet his burden by "substantial evidence." Bass v. SouthTrust Bankof Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989). Under the substantial evidence test the nonmovant must present "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. FoundersLife Assurance Co. of Florida, 547 So.2d 870, 871 *Page 775 
(Ala. 1989). More simply stated, "[a]n issue is genuine if reasonable persons could disagree." Schwarzer, Summary JudgmentUnder the Federal Rules: Defining Genuine Issues of MaterialFact, 99 F.R.D. 465, 481 (1982).
 II. Facts
Bramlett purchased a Plymouth Acclaim automobile from Adamson and obtained financing through FMCC. Bramlett's claims arise from the failure of FMCC and Adamson to disclose an agreement between FMCC and Adamson whereby FMCC purchased Bramlett's financing contract at a lower interest rate than the rate that Bramlett had agreed to pay.
Viewed most favorably to Bramlett, the evidence shows that Bramlett negotiated the purchase of an automobile at Adamson. FMCC and Adamson had a mutual agreement whereby Adamson received a 3% commission on all financing contracts it obtained for FMCC. Bramlett was experienced in the purchase and financing of automobiles. After Bramlett made his selection, an agent of Adamson told Bramlett that Adamson would get the best financing available. The agent disclosed the financing rate and cost of financing the purchase to Bramlett; however, the agent did not disclose Adamson's agreement with FMCC or the amount of the 3% commission.
When Bramlett asked why the cost of financing was so high, the agent informed him that the high cost was because Bramlett was a poor credit risk. At the time the agent made this representation to Bramlett, Adamson intended to finance Bramlett's purchase through FMCC under its agreement with FMCC. The financing contract was prepared by FMCC and executed on FMCC forms. Although the 3% commission was disclosed in the financing documentation between Adamson and FMCC, it was not disclosed in the financing documentation provided to Bramlett.
Bramlett argues that Adamson and FMCC fraudulently suppressed the 3% commission agreement between them because, he says, the commission resulted in a higher interest rate to Bramlett. Bramlett testified that had he known of the commission, he would have obtained financing elsewhere. Bramlett further argues that he was defrauded because he justifiably relied on Adamson's agent's representation that he would obtain the best financing available. Bramlett argues that Adamson and FMCC conspired to defraud him, and he asserts that the contract he signed was unconscionable.
 III. Fraud A. Suppression
The elements of a claim of fraudulent suppression are: (1) the suppression of a material fact (2) that the defendant was under a duty to communicate (3) because of the confidential relationship between the parties or the circumstances of the case and (4) which causes injury as a proximate consequence.Hines v. Riverside Chevrolet-Olds, Inc., 655 So.2d 909 (Ala. 1994); Applin v. Consumers Life Ins. Co. of North Carolina,623 So.2d 1094 (Ala. 1993).
A material fact is a fact that will induce action in the complaining party. Bank of Red Bay v. King, 482 So.2d 274 (Ala. 1985); Crigler v. Salac, 438 So.2d 1375 (Ala. 1983). A reasonable inference from the fact of the 3% commission is that it increased the financing cost to Bramlett. Bramlett testified that he would not have contracted to finance his purchase with Adamson and FMCC had he known of the commission. As in most cases of suppression, the question of materiality is a question for the jury. See, e.g., Bank of Red Bay, supra; Jim WalterHomes, Inc. v. Waldrop, 448 So.2d 301 (Ala. 1983).
The effect of the 3% commission in increasing Bramlett's financing costs also relates to the proximate cause of damage. Considering the evidence that Bramlett accepted the representation that the financing rate quoted was the best available, the question of proximate cause of damages is also a question for the jury. This is especially applicable under the more liberal construction of proximate cause applied to torts alleging intentional conduct. Rodopoulos v. Sam PikiEnters., Inc., 570 So.2d 661 (Ala. 1990); *Page 776 Shades Ridge Holding Co. v. Cobbs, Allen Hall Mortgage Co.,390 So.2d 601 (Ala. 1980).
The critical question is whether there was a duty to disclose the particulars of the financing arrangement under the circumstances of this case. At the outset, we address the application of Ala. Code 1975, § 5-19-6(c), a portion of the Alabama "Mini-Code." In pertinent part, that section provides:
 "[T]here is no obligation or duty under this chapter to disclose to a debtor any agreement to assign or otherwise transfer a consumer credit transaction at a discount or that the assignee of, or person who funded, the consumer credit transaction agreed or may agree to pay the creditor or other person who originated the consumer credit transaction all or a portion of the prepaid finance charges and other fees and/or a portion of the finance charge to be paid by the debtor over the term of the transaction and/or other compensation irrespective of how the compensation is determined or described."
Adamson and FMCC contend that this language means that Adamson had no duty to disclose the 3% commission. Based on the facts of this case, we disagree.
Bramlett's suppression claim is based on Ala. Code 1975, §6-5-102. Ala. Acts 1994, No. 94-115, which amends Section5-19-6, provides in Section 4: "Section 6-5-102 and Sections8-19-1 through 8-19-15 are not amended or repealed by this act." We conclude that although § 5-19-6 does not impose a duty to disclose a discount in a consumer credit transaction, that section does not mean that a duty to disclose such a discount cannot arise from other circumstances. This conclusion is strongly supported by the construction of the Mini-Code by our Supreme Court that it is consumer legislation that promotes the full disclosure of financing charges. See, e.g., Smith v. FirstFamily Financial Services, Inc., 626 So.2d 1266 (Ala. 1993).
In response to Judge Thigpen's dissent on rehearing, the goal of the Mini-Code is "the protection of the public."McCullar v. Universal Underwriters Life Ins. Co., 687 So.2d 156
(Ala. 1996). Accordingly, we will not hold that the Mini-Code means that, as a matter of law, hidden discounts can never support a claim of common law fraudulent suppression.
Under the facts of the present case, we do not address whether Adamson had a duty to disclose the commission in the absence of any inquiry. We hold that Bramlett's inquiry as to why the finance charge was so high is substantial evidence from which the trier of fact could infer that Adamson had a duty to disclose the full nature of Adamson's commission agreement with FMCC. A duty to disclose can arise from a request for information. Hines, supra; Dodd v. Nelda Stephenson Chevrolet,Inc., 626 So.2d 1288 (Ala. 1993). One who responds to an inquiry has the duty to speak the entire truth. First Va.Bankshares v. Benson, 559 F.2d 1307, rehearing denied, 564 F.2d 416 (5th Cir. 1977), cert. denied, 435 U.S. 952, 98 S.Ct. 1580,55 L.Ed.2d 802 (1978); Roberts v. C S Sovran Credit Corp. ofAla., 621 So.2d 1294 (Ala. 1993); and Fennell Realty Co. v.Martin, 529 So.2d 1003 (Ala. 1988).
Bramlett's request why the financing rate was so high is substantial evidence from which a reasonable person could infer that Adamson had a duty to disclose its commission arrangement with FMCC. Moreover, FMCC's preparation of the loan documentation to prevent disclosure of the 3% commission to Bramlett raises a question of fact as to whether FMCC was a participant in the alleged suppression. Accordingly, the trial court's entry of summary judgment with respect to Bramlett's claim of fraudulent suppression is due to be reversed as to both Adamson and FMCC.
 B. Misrepresentation
As distinct from fraudulent suppression, fraud by misrepresentation requires that the plaintiff prove a false statement of a material fact that the plaintiff relied on to his detriment. Reeves Cedarhurst Dev. Corp. v. First Am. Fed.Sav. Loan Ass'n, 607 So.2d 180 (Ala. 1992).
The evidence raises a question of fact about two representations: (1) after Bramlett *Page 777 
agreed to purchase the automobile, Adamson Ford told him that they would obtain the best financing available, and (2) the reason Bramlett's financing rate was high was because of his credit history. These representations, taken together, support the inference that Adamson falsely assured Bramlett that he was getting the best financing contract available. Bramlett argues that he justifiably relied on these statements and obtained financing with Adamson Ford and FMCC, and as a result, Bramlett was damaged by paying a higher interest rate than he could have obtained elsewhere.
In light of the evidence of the agreement between FMCC and Adamson as to the 3% commission, reasonable persons could disagree as to whether Adamson obtained the best financing or simply acted to obtain the 3% commission by delivering the financing contract to FMCC. We conclude that there is a question of fact for the jury whether these representations by Adamson were false.
Bramlett's reliance on Adamson's representations must be evaluated under the standard set out by our Supreme Court inHickox v. Stover, 551 So.2d 259, 263 (Ala. 1989):
 "[A] plaintiff . . . has not justifiably relied on the defendant's representation if that representation is 'one so patently and obviously false that he must have closed his eyes to avoid the discovery of the truth.' "
Hickox, 551 So.2d at 263 (quoting Southern States Ford, Inc. v.Proctor, 541 So.2d 1081, 1091-92 (Ala. 1989) (Hornsby, C.J., concurring specially)). See also Weaver v. Dan Jones Ford,Inc., 679 So.2d 1106 (Ala.Civ.App. 1996).
Although the simple statement that Adamson could obtain the best financing might not have been justifiably relied on by a buyer of Bramlett's experience, that statement was only part of the representation made to Bramlett. The additional representation that the rate was high because of Bramlett's credit history implies that Adamson checked all the possibilities and was unable to provide a better rate. A question of fact as to justifiable reliance can be raised by the entire context of a conversation, as it is in these circumstances. Love v. Townsend Ford, Inc., 623 So.2d 1153
(Ala. 1993).
FMCC also argues that it cannot be liable for any misrepresentation because it had no direct contact with Bramlett. However, our law is long settled that a principal may be liable for the tortious acts of its agent under the doctrine of respondeat superior. Southern Life Health Ins. Co. v.Turner, 571 So.2d 1015 (Ala. 1990). Moreover, questions of agency are usually questions of fact:
 "A summary judgment on the issue of agency is generally inappropriate because the existence of an agency relationship is generally a question of fact to be determined by the trier of fact. Carlton v. Alabama Dairy Queen, Inc., 529 So.2d 921, 923 (Ala. 1988); Malmberg v. American Honda Motor Co., 644 So.2d 888, 890 (Ala. 1994). The test for determining whether an agency relationship exists under the doctrine of respondeat superior is whether the alleged principal has control over the manner of the alleged agent's performance. Carlton, supra, at 923."
Curry v. Welborn Transp., 678 So.2d 158, 160 (Ala.Civ.App. 1996).
Our Supreme Court has held that a single sale of chattel paper is not substantial evidence of an agency relationship.Mardis v. Ford Motor Credit Co., 642 So.2d 701 (Ala. 1994). However, the facts of this case raise more of an indicia of an agency relationship than a single chattel paper transaction. In this case, there is evidence that Adamson and FMCC had long engaged in a business relationship that included FMCC doing "floor plans" for Adamson's sales in addition to its agreements governing Adamson's acquisition of finance contracts for FMCC. Moreover, Adamson's alleged misrepresentations were made in attempting to obtain a finance contract for FMCC. These circumstances present a question of fact whether Adamson was acting in an agency relationship with FMCC.
The elements of materiality, causation, and damages are questions for the jury under the same rationale as discussed under the claim of suppression. It follows that the trial court erred in entering the summary judgment for Adamson and FMCC on the claim of misrepresentation. In response to Judge Crawley's *Page 778 
dissent on rehearing, we emphasize that we hold only that the summary judgment on these facts was not appropriate; we do not hold that either suppression or misrepresentation took place. That question must be resolved by the trier of fact after a review of the facts of this particular case. Hanners, Harrell, and Wilson, supra.
 IV. Conspiracy
A civil conspiracy is a combination between two or more persons to accomplish by concert an unlawful purpose or to accomplish by unlawful means a purpose not itself unlawful.Barber v. Stephenson, 260 Ala. 151, 69 So.2d 251 (1954). The wrong committed is the gist of the action. Snyder v. Faget,295 Ala. 197, 326 So.2d 113 (1976). Further,
 "A civil conspiracy action focuses not on the conspiracy alleged, but on the wrong committed by virtue of the alleged conspiracy. Sadie v. Martin, 468 So.2d 162, 165 (Ala. 1985). Conspiracy itself furnishes no civil cause of action. Allied Supply Co. v. Brown, 585 So.2d 33, 36 (Ala. 1991)."
Triple J Cattle, Inc. v. Chambers, 621 So.2d 1221, 1225 (Ala. 1993).
We have already concluded that Bramlett's claims of suppression and misrepresentation are sufficient to raise a question of fact for the jury. Therefore, Bramlett's conspiracy claim does not fail for lack of substantial evidence of an underlying wrong. Moreover, there is substantial evidence in this record to support the inference that Adamson and FMCC "worked in concert" toward the end of obtaining Bramlett's financing contract. The entry of the summary judgment on the conspiracy claim was therefore incorrect.
 V. Unconscionability
"The question of unconscionability of a contract is a matter of law for the court; . . ." Davis v. Ford Motor Credit Co.,599 So.2d 1123, 1126 (Ala. 1992). The applicable statutes discussing unconscionability are Ala. Code 1975, §§ 5-19-16 and7-2-302. With reference to a finding of unconscionability, both statutes use the phrase "if the court as a matter of law. . . ." The Court in Davis cited the first court to review these general provisions, West Point-Pepperell, Inc. v. Bradshaw,377 F. Supp. 154 (M.D.Ala. 1974). That court, discussing a finding of unconscionability under the Alabama Commercial Code, §7-2-302, stated:
 "The statute contemplates the court's determining, as a matter of law, upon consideration of the contract itself and the circumstances at the time such contract was made, whether or not such contract was unconscionable under the circumstances then in existence."
377 F. Supp. at 157. See also Wilson v. World Omni Leasing,Inc., 540 So.2d 713 (Ala. 1989).
There is no general standard in Alabama law for unconscionability, and each determination must turn on the circumstances of the particular case before the court. E WBldg. Material Co. v. American Sav. Loan Ass'n, 648 F. Supp. 289
(M.D.Ala. 1986).
 "An unconscionable contract has been defined as one 'such as no man in his sense and not under delusion would make on the one hand, and as no honest and fair man would accept on the other.' West Point-Pepperell, Inc. v. Bradshaw,377 F. Supp. 154 (M.D.Ala. 1974) (quoting Hume v. United States, 132 U.S. 406 [10 S.Ct. 134, 33 L.Ed. 393] (1889))."
Lloyd v. Service Corp. of Ala., 453 So.2d 735, 739 (Ala. 1984).
The trial court's entry of the summary judgment on this issue was, in effect, a determination that the financing contract Bramlett signed was not unconscionable as a matter of law. After a careful review of the general terms of the financing contract, with the interest rate of 15.49%, we conclude that the trial court correctly held that the contract was not unconscionable under the circumstances of this case. See, e.g.,Harris v. Howell, 739 F. Supp. 565 (N.D.Ala. 1989), aff'd, 902 F.2d 959 (11th Cir. 1990) (holding that loans with a 20% rate were not unconscionable), and Wilson, supra (holding that a lease agreement was not unconscionable where the lessor demonstrated an understanding of the terms). Accordingly, the trial court's entry of the summary judgment as to this issue is due to be affirmed. *Page 779 
 VI. Conclusion
The claims of suppression, misrepresentation, and civil conspiracy all present questions of fact for the trier of fact. The summary judgments as to those issues must be reversed and the cause remanded for further proceedings. The summary judgment as to Bramlett's claim of unconscionability is affirmed.
ORIGINAL OPINION WITHDRAWN; OPINION SUBSTITUTED; APPLICATION FOR REHEARING OVERRULED; AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
YATES, J., concurs.
MONROE, J., concurs specially.
THIGPEN and CRAWLEY, JJ., dissent.