Linda S. FLOWERS, Plaintiff,

v.

**FORD MOTOR CREDIT COMPANY,**
Defendant.

Civil Action No. 94–A–1648–N.

United States District Court,
M.D. Alabama,
Northern Division.

Feb. 27, 1997.

C. Know McLaney, III, Angela L. Kimbrough, McLaney & Associates, Montgomery, AL, James O. Latturner, Cathleen M. Combs, Daniel A. Edelman, Edelman & Combs, Chicago, IL, for Linda S. Flowers.

Thomas M. Byrne, Ann G. Fort, Sutherland, Asbill & Brennan, Atlanta, GA, William L. Howell, David Allen McDonald, William L. Howell, P.A., Mobile, AL, Ford Motor Credit Co.

## ORDER

There being no objections filed to the Recommendation of the Magistrate Judge filed herein on February 11, 1997, said Recommendation is hereby adopted, and it is the

ORDER, JUDGMENT and DECREE of the court that Ford Motor Credit Company's Renewed Motion for Summary Judgment filed on September 3, 1996 be GRANTED and that this cause be DISMISSED with prejudice.

## RECOMMENDATION OF THE MAGISTRATE JUDGE

CARROLL, United States Magistrate Judge.

## I. INTRODUCTION AND PROCEDURAL HISTORY

On December 28, 1994, the plaintiff, Linda Flowers, filed this action complaining about the decision of Troy Ford to charge a fee for document preparation and processing. Later, a first amended complaint was filed adding claims based on the dealers sale of the plaintiff's financing contract to Ford Motor Credit Corporation (FMCC) at a rate lower than the finance rate negotiated with the customer. The plaintiff contended that both of these practices violated the Truth in Lending Act (TILA) and Regulation Z, which implements TILA, and/or the Alabama Mini-Code. FMCC filed a motion for summary judgment directed to those claims. Before the summary judgment motion could be decided, the plaintiff filed a motion for leave to file a second amended complaint and then a revised second amended complaint. The motion for leave to amend was granted on July 11, 1996. In the revised second amended complaint, the plaintiff abandoned her original legal theories and embarked on a new legal course. The revised second amended complaint focuses on the financing of the plaintiff's automobile and argues that FMCC's failure to disclose to the plaintiff that there was a difference between the rate at which FMCC bought the plaintiff's financing contract from the dealer and the finance rate which the dealer offered the plaintiff creates a variety of courses of action. Count I of the revised second amended complaint is a RICO count, count II is a fraud count, count III is a claim that FMCC induced Ford dealers to breach their fiduciary duty to the plaintiff, and count IV is claim that FMCC induced the Ford dealers to breach their contract with the plaintiff. The plaintiff seeks to represent a nationwide class of all similarly situated consumers. The case is now pending before the court on a motion for summary judgment filed by FMCC. The

plaintiff has been provided an opportunity to respond and has done so.

## II. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." This standard can be met by the movant, in a case in which the ultimate burden of persuasion at trial rests on the nonmovant, either by submitting affirmative evidence negating an essential element of the nonmovant's claim, or by demonstrating that the nonmovant's evidence itself is insufficient to establish an essential element of his or her claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The burden then shifts to the nonmovant to make a showing sufficient to establish the existence of an essential element to his claims, and on which he bears the burden of proof at trial. *Id.* To satisfy this burden, the nonmovant cannot rest on the pleadings, but must, by affidavit or other means, set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e).

The court's function in deciding a motion for summary judgment is to determine whether there exist genuine, material issues of fact to be tried; and if not, whether the movant is entitled to judgment as a matter of law. *See Dominick v. Dixie Nat'l Life Ins. Co.,* 809 F.2d 1559 (11th Cir.1987). It is substantive law that identifies those facts which are material on motions for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 258, 106 S.Ct. 2505, 2515, 91 L.Ed.2d 202 (1986); *see also DeLong Equip. Co. v. Washington Mills Abrasive Co.,* 887 F.2d 1499 (11th Cir.1989), *cert. denied,* 494 U.S. 1081, 110 S.Ct. 1813, 108 L.Ed.2d 943 (1990).

When the court considers a motion for summary judgment, it must refrain from deciding any material factual issues. All the evidence and the inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmovant. *Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1080 (11th Cir.1990); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The movant bears "the exacting burden of demonstrating that there is no dispute as to any material fact in the case." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung,* 695 F.2d 1294, 1296 (11th Cir.1983); *see also Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

With these rules and principles of law in mind, the court will determine whether summary judgment is appropriate or whether there exist genuine issues of material fact that should properly proceed to trial for resolution.

## III. FACTS

On February 4, 1994, the plaintiff purchased a 1993 Ford Tempo from Troy Ford. The first person with whom she dealt was a salesman named Jimmy King. The plaintiff was originally interested in buying a used Beretta. At King's insistence, she also looked at the Tempo which she ultimately bought. King allowed the plaintiff to drive the Tempo to work to see how she liked it. When she returned to Troy Ford with the car, she told King that she would have to have her husband look at the car. King told her that the paperwork had already been completed on the car and sent her to see Wesley Senn who was the person at Troy Ford who handled all of the installment contracts and financing matters. The plaintiff had previously filled out an application for the financing of her purchase. Her application for financing was then sent to FMCC by computer link. FMCC then informed Troy Ford by the same computer link that it would buy the plaintiff's finance contract at a rate of 12.75%. Troy Ford agreed to finance the car for the plaintiff at a rate of 14.75%. The dealer and FMCC shared in the funds generated by the 2 percentage point difference between the "buy rate" and the finance rate actually charged the consumer. The gravamen of the plaintiff's complaint is that the failure to disclose the difference between the "buy rate" and the rate actually charged the consumer violates state and federal law.

## IV. DISCUSSION

### A. THE FRAUDULENT SUPPRESSION CLAIM (Count II)

 The essential elements of a claim of fraudulent suppression are (1) a duty on the part of the defendant to disclose, (2) the defendant's suppression of material facts, (3) the defendant's knowledge of the facts and their materiality, (4) action by the plaintiff in reliance on the suppression, and (5) damages resulting from the reliance action. *Wolff v. Allstate Life Insurance Company*, 985 F.2d 1524 (11th Cir.1993) (citing *Hardy v. Blue Cross & Blue Shield*, 585 So.2d 29, 32 (Ala. 1991)).[1] Under Alabama law, a duty to disclose exists only if there are "confidential relations" or "particular circumstances" which give rise to an obligation to communicate. *Wolff v. Allstate Life Insurance Company*, 985 F.2d at 1529.

As noted above, this case turns on the question of whether there is a duty to disclose which flows from FMCC through Troy Ford to the plaintiff. The recent decision of the Alabama Court of Civil Appeals in *Bramlett v. Adamson Ford*, 1996 WL 730853, —— So.2d —— (Ala.Civ.App. Dec.20, 1996) (on application for rehearing), addresses this outcome determinative issue. The plaintiff in *Bramlett* purchased a Plymouth Acclaim automobile from Adamson Ford and obtained financing through FMCC. After Bramlett had selected the automobile, he was told by an agent of the dealer that Adamson would get the best financing available. The agent told Bramlett what the rate of finance would be but did not disclose the agreement with FMCC or the "buy" rate. Bramlett made inquiries of the dealer about the finance rate and was told that he was being charged a high finance rate because he was a poor credit risk. The majority of the court in *Bramlett* concluded that a duty to disclose the difference between the "buy rate" and the finance charge actually charged the consumer arose out of the facts of the actual transaction. As the court noted:

> We hold that Bramlett's inquiry as to why the finance charge was so high is substantial evidence from which the trier of fact could infer that Adamson had a duty to

disclose the full nature of Adamson's commission agreement with FMCC. A duty to disclose can arise from a request for information.

*Id.* at 1996 WL 730853 at *3, at ——. The court went on to conclude that FMCC, as well as the dealer, was liable because "FMCC's preparation of the loan documentation to prevent disclosure of the 3% commission raises a question of fact as to whether FMCC was a participant in the alleged suppression." *Id.* at 1996 WL 730853 at *4, at ——. The question of whether a dealer and/or FMCC had an absolute duty to disclose was also discussed. Two of the judges, Judge Robertson and Judge Yates, did not address the question. Three of the judges, however, reached the question and concluded that there was no such absolute duty. Judge Monroe, concurring, concluded that a duty to disclose arose only when there was an inquiry from the consumer:

> While I do not believe that Adamson had an obligation to volunteer that it was receiving a commission from Ford Motor Company, I do think that when Bramlett asked Adamson's agent point blank why the rate of financing was so high, the agent had a duty to tell him the truth ...

*Id.* 1996 WL 730853 at *7, at ——.

Judge Thigpen and Judge Crawley, dissenting, concluded that there was no duty to disclose under any circumstances. The opinion in *Bramlett* may, therefore, be read to impose a duty of disclosure only where there is inquiry and/or affirmative misrepresentation.

As noted previously, in order to avoid summary judgment, the plaintiff must produce some evidence to support the essential elements of her claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). It is appropriate, therefore, to examine her claims in the light of the parameters of the *Bramlett* opinion.

As noted above, the decision of the Alabama Court of Civil Appeals in *Bramlett* establishes that a duty to disclose may arise

---

**1.** In order to prove reliance, the plaintiff must show that the suppression induced her to act.

*See McGowan v. Chrysler Corporation*, 631 So.2d 842, 846 (Ala.1993).

out of the discussions between a consumer and a dealer or its agents about financing. According to the undisputed evidence before the court, there were no discussions of any kind about financing during the transaction at issue in this case. As the plaintiff testified in her deposition:

Q. Did you ask Mr. Senn anything about the 14.75 annual percent rate ?

A. No.

Q. Did you ask Mr. Senn whether or not the 14.75 % percentage rate was the lowest that you qualified for?

A. No, I didn't have time to ask him anything.

Q. Did he make any comment in either one of those regards?

A. No.

There is no fact in this record from which it could be found or inferred that Troy Ford did anything in its dealings with the plaintiff which would create a duty to disclose on the part of FMCC. FMCC is entitled to summary judgment on the fraudulent suppression claim.

■ The court wishes to note that its conclusion is based in principal part on the holding of the Alabama Court of Civil Appeals in the *Bramlett* case. As previously noted, the court reads *Bramlett* to hold, as a matter of law, that there is no duty to disclose the difference between the "buy" rate and the rate charged this consumer unless there is some discussion about financing or the dealer undertakes to obtain the "best possible financing." Generally, the question of whether there is a duty to disclose is one for the jury. *Interstate Truck Leasing, Inc. v. Bender,* 608 So.2d 716 (Ala.1992). However, in this case, the plaintiff has failed to produce any evidence which would have created a duty to disclose under the *Bramlett* decision.

## B. THE RICO CLAIM (Count I)

■ In Count I of the revised second amended complaint, the plaintiff claims that the defendants failure to disclose the difference between the consumer financing rate and the "buy" rate constitutes a violation of the federal RICO statute, 18 U.S.C. § 1962(c). In order to prevail on this type of RICO claim, a plaintiff must establish that the defendant is conducting an enterprise, as that term is defined in the statute, through a pattern of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). An act of racketeering, also referred to as a predicate act, is defined to include acts of mail and wire fraud, 18 U.S.C. § 1961(1). A pattern of racketeering activity is shown when a racketeer commits at least two distinct but related predicate acts. *Bank of America Nat'l Trust & Sav. Ass'n v. Touche Ross & Co.,* 782 F.2d 966, 971 (11th Cir.1986). The plaintiff in this case alleges that FMCC engaged in violations of 18 U.S.C. § 1341 (Mail Fraud) and 18 U.S.C. § 1343( Wire Fraud). Specifically, the plaintiff alleges:

FMCC sent information concerning the kickback program to dealers via the United States mails.

FMCC received information about prospective customers via the United States Mails from the customer, the dealer, and the customer's employer, banks, creditors, and other sources of credit information.

FMCC received through modem and fax transmissions and the U.S. mails copies of borrowers' credit reports issued by out-of-state agencies.

FMCC faxed or mailed the processed loan application of plaintiff and each class member for final loan approval.

Once approved, FMCC mailed or faxed back to the dealer the final approval sheet listing the rates and terms for the loan, and specifying any final conditions needed for the loan. The approval sheets contained the amount which the dealer was to receive from FMCC after the closing.

FMCC invited borrowers to pay by mail and received via United States Mails monthly loan payments from borrowers.

FMCC sent default notices via United States Mails.

FMCC sent via the United States Mails notices and other documents necessary to enforce its right to payment against its collateral, such as notices of repossession and notices required in some states before title to a repossessed vehicle may be transferred.

The elements of mail and wire fraud are identical. *Carpenter v. United States*, 484 U.S. 19, 25 n. 6, 108 S.Ct. 316, 320 n. 6, 98 L.Ed.2d 275 (1987). Mail or wire fraud exists when a person (1) intentionally participates in a scheme to defraud another of money or property, and (2) uses the mails or wires in furtherance of that scheme. *United States v. Downs*, 870 F.2d 613, 615 (11th Cir.1989). Additionally, however, in the RICO context, the plaintiff must have been the target of the scheme to defraud and must have relied to his detriment on the misrepresentations [or suppressions] made in furtherance of the scheme. *Pelletier v. Zweifel*, 921 F.2d 1465, 1499–1500 (11th Cir.), *cert. denied*, 502 U.S. 855, 112 S.Ct. 167, 116 L.Ed.2d 131 (1991).

In this case, there is scant evidence that FMCC intentionally engaged in a scheme to defraud anyone. However, the court need not reach the question of whether the plaintiff has provided sufficient evidence of intentional fraud against FMCC to survive summary judgment on her RICO claim. It is clear that the plaintiff has absolutely failed to produce any evidence which would support a finding of justifiable reliance. As previously noted, there was no discussion between the plaintiff and the automobile dealer about financing. The plaintiff simply accepted the terms as they were presented to her. There is nothing in the record from which it could be found or inferred that the plaintiff relied, in any way, on the alleged suppression of the "buy" rate. Indeed, the plaintiff's response to the motion for summary judgment does not focus at all on the elements of the RICO claim or show how her evidence meets those elements. It simply makes an argument that the "plaintiff was harmed by Ford's conduct." The plaintiff has not produced sufficient evidence to withstand a motion for summary judgment on the RICO claim.

## C. INDUCING BREACH OF FIDUCIARY DUTY AND BREACH OF CONTRACT (Counts III and IV)

The plaintiff also claims that the defendant's failure to disclose the "buy" rate constitutes an inducement for breach of fiduciary duty and breach of contract. The validity of these claims turn on the question of whether Troy Ford was an agent of the plaintiff. Obviously, if Troy Ford was not an agent of the plaintiff, there can be no cause of action for alleged interference by FMCC with the agency relationship. *See generally Williams v. Williams*, 497 So.2d 481 (Ala. 1986) (Agency relationship is a fiduciary relationship). According to Alabama law, an agency relationship exists where one party agrees to act on behalf of another and be subject to his control. *Barrett Mobile Home Transp., Inc. v. McGugin*, 423 So.2d 1364, 1366 (Ala.Civ.App.1981), *rev'd on other grounds sub nom. Ex Parte McGugin*, 423 So.2d 1367 (Ala.1982). Consequently, the question of whether an agent-principal relationship exists turns entirely on the facts and circumstances of each case. *Federal Land Bank v. Jones*, 456 So.2d 1 (Ala.1984). The plaintiff argues that an agency relationship was created because the dealer agreed to obtain financing for the plaintiff. Although agency was not discussed in *Bramlett*, this agency theory has been implicitly rejected by the *Bramlett* case. In that case, as previously noted, three judges of the Alabama Court of Civil Appeals concluded that there was no relationship which existed between an automobile dealer and a consumer which would give rise to an absolute duty on the part of an automobile dealer to inform the consumer that he was charging an interest rate which is higher than the "buy" rate authorized by the finance company. The court in *Bramlett* did not hold that a duty to disclose arose simply because the dealer financed the car for the consumer. There is nothing in the record before the court that indicates that the dealer in this case undertook to get the best financing available or misrepresented anything to the plaintiff about financing that would have created some sort of agency relationship. Accordingly, the defendant is entitled to summary judgment on Counts III and IV.

## V. CONCLUSION

For the foregoing reasons, it is the RECOMMENDATION of the Magistrate Judge that Ford Motor Credit Company's Renewed Motion for Summary Judgment filed on Sep-

tember 3, 1996 be GRANTED and that this cause be DISMISSED with prejudice.

DONE this 11th day of February, 1997.