717 So.2d 781 (1997)
Ex parte FORD MOTOR CREDIT COMPANY.
Ex parte ADAMSON FORD, INC.
(In re Robert BRAMLETT, Sr.
v.
ADAMSON FORD, INC., and Ford Motor Credit Company).
1960517, 1960536.
Supreme Court of Alabama.
November 7, 1997.
*782 Dennis G. Pantazis of Gordon, Silberman, Wiggins & Childs, P.C., Birmingham, for Ford Motor Credit Co.
John D. Richardson and G. Randall Spear of Richardson, Daniell, Spear & Upton, P.C., Mobile, for Adamson Ford, Inc.
Garve Ivey, Jr., and Barry A. Ragsdale of King, Ivey & Junkin, Jasper and Birmingham, for respondent.
H. Hampton Boles, Michael L. Edwards, and Gregory C. Cook of Balch & Bingham, Birmingham, for amicus curiae Alabama Bankers Ass'n, in support of petitioner Ford Motor Credit Co.
BUTTS, Justice.
We granted certiorari review upon the petitions of the defendants Ford Motor Credit Company ("FMCC") and Ford automobile dealership Adamson Ford, Inc. ("Adamson"), in order to determine whether the Court of *783 Civil Appeals erred in reversing the summary judgment in their favor entered on several claims brought by Robert Bramlett, Sr.[1]
Bramlett purchased a used automobile from Adamson. At Bramlett's request, Adamson provided financing for the purchase through FMCC at an interest rate of 15.49%. In accordance with the terms of an agreement between Adamson and FMCC, FMCC purchased the loan contract from Adamson at a lower rate than Bramlett had agreed to pay, in effect paying Adamson a commission of 3% of the loan amount; we will refer to this arrangement as "the commission agreement." Thereafter, Bramlett sued Adamson and FMCC, alleging breach of contract, fraudulent misrepresentation, fraudulent suppression, the tort of outrage, unconscionability, and civil conspiracy. The basis for Bramlett's claims was that Adamson and FMCC had failed to disclose to him the existence of their 3% commission agreement on loan contracts purchased from Adamson by FMCC.
The trial court entered a summary judgment in favor of Adamson and FMCC on all of Bramlett's claims. Bramlett appealed the summary judgment as to his claims of misrepresentation, suppression, unconscionability, and conspiracy. In Bramlett v. Adamson Ford, Inc., 717 So.2d 772 (Ala.Civ.App.1996), the Court of Civil Appeals reversed the summary judgment as to the misrepresentation, suppression, and conspiracy claims, but affirmed it as to the unconscionability claim.

I. Issue and Standard of Review

We must decide whether the Court of Civil Appeals erred in reversing the summary judgment for Adamson and FMCC as to Bramlett's claims of fraudulent misrepresentation, fraudulent suppression, and civil conspiracy. In order to enter a summary judgment, the trial court must determine that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Rule 56, Ala. R.Civ.P.; Bussey v. John Deere Co., 531 So.2d 860 (Ala.1988). In order to defeat a properly supported motion for summary judgment, the nonmovant must present substantial evidence creating a genuine issue of material fact. Betts v. McDonald's Corp., 567 So.2d 1252 (Ala.1990). Evidence is "substantial" if it is of "such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So.2d 870 (Ala.1989). Finally, this Court must review the record in a light most favorable to the nonmovant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala. 1990).

II. Facts

In September 1993 Bramlett purchased a used automobile from the Long-Lewis Ford dealership; the automobile, a Ford Crown Victoria, was a "program car." He financed part of the purchase price through FMCC at an interest rate of 12.75%. However, before he took possession of the automobile it caught fire and was destroyed. The fire loss was covered by Bramlett's insurance policy.
A month later, in October 1993, Bramlett, still interested in purchasing a used car, found on Adamson's sales lot a 1992 Plymouth Acclaim that he liked. This car was not a program car. Bramlett was not a typical automobile purchaser. Rather, he was quite experienced in purchasing and selling used automobiles. Over his lifetime Bramlett had bought, repaired, and sold as many as 200 automobiles in his own part-time used car sales business, which he runs out of his home. He has financed the purchase of as many 20 of those automobiles. Bramlett, who has a G.E.D. certificate and who had attended the University of Alabama for one year, also had had prior experience as an employee of an automobile dealership and as an automobile damage claims appraiser for insurance companies.
The purchase price Adamson had listed for the Plymouth Acclaim was $8,850. Bramlett, *784 saying he believed that price was too high, negotiated with an Adamson salesperson to obtain a purchase price $500 lower. Bramlett agreed to purchase the car for $8,350. He said he could make only a $250 down payment on the purchase because he had not yet received the check from his insurance company relating to the Ford Crown Victoria that had been destroyed, and he told the Adamson salesperson that he wished to finance the remainder of the purchase price. Bramlett told the salesperson that he was in good standing with FMCC and suggested that his financing be obtained through FMCC. The salesperson told Bramlett that he would find Bramlett the best financing rate FMCC had available. Ultimately, the salesperson informed Bramlett that he could offer him financing over a term of 48 months at 15.49%. Even though Bramlett was aware that different lenders offer different interest rates, he did not seek a lending source for his used automobile purchase loan other than that offered through Adamson. Thus, although Bramlett knew he could "shop around" for financing,[2] he did not do so. The financing agreement signed by Bramlett included the disclosures required by the Federal Truth-in-Lending Act, 15 U.S.C. § 1601 et seq.
Although Bramlett agreed to the 15.49% interest rate, he asked the Adamson salesperson why it was so high. The salesperson responded by telling him that the rate was what it was because Bramlett was considered a poor credit risk  Bramlett's credit history included a personal bankruptcy.[3] Adamson financed Bramlett's automobile purchase loan through its agreement with FMCC. The financing contract was executed on FMCC forms. Although the 3% commission agreement was disclosed by the financing documentation between Adamson and FMCC, it was not disclosed by the financing documentation provided to Bramlett. Bramlett, upon later learning of the commission agreement between Adamson and FMCC, sued.

III. Fraudulent Suppression

A.
Bramlett contends that the Court of Civil Appeals correctly reversed the summary judgment as to the fraudulent suppression claim. He argues that Adamson and FMCC had a legal duty to disclose to him the fact that they had an agreement that, in effect, paid Adamson a commission of 3% of the loan amount of every financing agreement Adamson sold to FMCC, but that they deliberately breached that duty. Bramlett contends that the existence of the commission agreement between Adamson and FMCC resulted in his paying a higher interest rate than he would have paid if the agreement had not existed. Thus, he contends that the existence of the commission agreement was a fact material to the loan transaction because, he says, had he known of the commission agreement he would have sought financing elsewhere.
Bramlett cites several cases that he contends support his argument that it is at least a question of fact whether Adamson and FMCC had a duty to disclose to him their commission agreement. He proposes several alternative bases for the alleged duty to disclose. First, he contends that the duty to disclose can be based on Adamson and FMCC's relationship to him as lenders, which he contends can be a fiduciary relationship. Second, Bramlett argues that the duty to disclose can arise from Adamson and FMCC's having superior knowledge of a material fact that, had he known it, would have caused him to take other action. Third, Bramlett argues that a duty to disclose arose from his request for information, specifically his question to the Adamson salesperson asking why his interest rate was so high. Finally, he contends that the issue of the existence of a duty to disclose cannot be determined by this Court as a matter of law because, he says, it is uniquely within the province of a jury to consider such factors as the relative sophistication of the parties and the degree of specificity of the question asked by the consumer, and then to determine whether a *785 duty to disclose existed under those circumstances.
Bramlett also argues that he suffered injury as a result of Adamson and FMCC's failure to disclose to him their commission arrangement. He says that but for their suppression he would not have agreed to the 15.49% interest rate and would have obtained an interest rate from another lender that was 3% lower. Thus, he contends that he incurred damage equal to the 3% "extra interest."

B.
Both Adamson and FMCC contend that they had no legal duty to disclose to Bramlett the existence of the commission agreement; thus, they argue that the Court of Civil Appeals erred in reversing the summary judgment as to this claim. Adamson first argues that there is no statutory duty to disclose such information. It argues that Alabama's consumer protection legislation, the Alabama Mini-Code, § 5-19-1 to -32, Ala.Code 1975, does not impose on it a duty to disclose to customers such as Bramlett its commission agreement with FMCC. Adamson also contends that the Federal Truth-in-Lending Act and its regulations do not impose such a duty.
Although Adamson implies that the nonexistence of a statutory duty should end our inquiry, it goes on to argue that it had no common law duty to disclose to Bramlett its commission agreement with FMCC. In direct contradiction to Bramlett's first argument for the existence of a duty to disclose, Adamson argues that absent a special confidential relationship, a creditor-debtor relationship does not create a duty to disclose the kind of fact Bramlett claims was suppressed. Adamson also says that Bramlett was an experienced and intelligent businessman capable of protecting his interests in a commercial transaction, and it argues, therefore, that no duty to disclose such information existed.
Finally, Adamson relies on Blon v. Bank One, Akron, N.A., 35 Ohio St.3d 98, 519 N.E.2d 363 (1988), where the Supreme Court of Ohio was faced with a case nearly identical to this one. Adamson points out the Ohio Supreme Court's holding in that case:
"[A] creditor and consumer stand at arm's-length in negotiating the terms and conditions of a consumer loan and, absent an understanding by both parties that a special trust and confidence has been reposed in the creditor, the creditor has no duty to disclose to the consumer the existence and details of a finder's fee or similar arrangement with a credit arranger."
35 Ohio St.3d at 102, 519 N.E.2d at 368. Adamson suggests that this Court should adopt a similar holding.

C.
FMCC asserts that even if Adamson could be held to a duty to disclose the commission arrangement between Adamson and FMCC, it cannot be held liable because, it says, it was not a party to the conversation between Bramlett and Adamson and was unaware of it. FMCC also contends that it cannot be held vicariously liable because, it says, as a matter of law there was no agency relationship between it and Adamson. FMCC relies on this Court's opinion in Mardis v. Ford Motor Credit Co., 642 So.2d 701 (Ala.1994), which it contends is controlling on the issue of agency. FMCC argues that the Court of Civil Appeals erred in holding that Mardis was distinguishable, and it further argues that Mardis requires us to hold as a matter of law that Adamson is not its agent.

D.
The legislature has provided: "Suppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances." Ala.Code 1975, § 6-5-102. The trial court entered a summary judgment for the defendants on Bramlett's fraudulent suppression claim, and the Court of Civil Appeals reversed. Thus, we must determine whether Bramlett presented substantial evidence creating genuine issues of material fact as to each of the elements of a suppression claim. Those elements are: "(1) a duty on the part of the defendant to disclose facts; *786 (2) concealment or nondisclosure of material facts; (3) inducement of the plaintiff to act; (4) action by the plaintiff to his or her injury." Lambert v. Mail Handlers Benefit Plan, 682 So.2d 61, 63 (Ala.1996); Gewin v. TCF Asset Mgmt. Corp., 668 So.2d 523 (Ala. 1995).
Because we agree with the Court of Civil Appeals that this case presents at least a question of fact as to whether the existence of the commission agreement between Adamson and FMCC was a fact material to the loan transaction at issue, the critical question before us is whether the defendants had a legal duty to disclose to Bramlett that commission agreement. A duty on the part of one to disclose a material fact to another may be based on either a statute or the common law. In this case, there was no statutory duty to disclose the existence of the commission agreement. Neither the Alabama Mini-Code[4] nor the Federal Truth-in-Lending Act requires such a disclosure. However, those statutes do not prohibit such a duty from arising from the common law. Thus, we must determine whether the particular facts and circumstances of this case, viewed in a light most favorable to Bramlett, create a common law duty to disclose.
The Court of Civil Appeals answered this question as follows:
"Under the facts of the present case, we do not address whether Adamson had a duty to disclose the commission in the absence of any inquiry. We hold that Bramlett's [testimony that he asked] why the finance charge was so high is substantial evidence from which the trier of fact could infer that Adamson had a duty to disclose the full nature of Adamson's commission agreement with FMCC. A duty to disclose can arise from a request for information. One who responds to an inquiry has the duty to speak the entire truth.
"Bramlett's [testimony that he asked] why the financing rate was so high is substantial evidence from which a reasonable person could infer that Adamson had a duty to disclose its commission arrangement with FMCC."
Bramlett, 717 So.2d at 776 (citations omitted; emphasis original). Thus, the Court of Civil Appeals, in holding that the defendants had a duty to disclose the commission arrangement, specifically based that holding on Bramlett's general inquiry as to why the 15.49% interest rate offered by Adamson was so high. That court also implied that the Adamson salesperson had responded to Bramlett's question with only a half-truth.
We first respond to the issue not addressed by the Court of Civil Appeals: In the absence of Bramlett's inquiry, would Adamson and FMCC have had a duty to disclose to Bramlett their commission agreement? The answer is, clearly, no.[5] It is well settled that, in the absence of a special confidential relationship, the general creditor-debtor relationship does not impose a fiduciary *787 duty requiring such disclosure.[6] See Bank of Red Bay v. King, 482 So.2d 274 (Ala.1985); Baylor v. Jordan, 445 So.2d 254 (Ala.1984). Moreover, Bramlett was involved in an arm's-length commercial transaction with Adamson of a type he was more than adequately knowledgeable about, he was not in a position of unequal bargaining power, and he was fully capable of protecting his own interests. In such a situation, Alabama common law imposes no duty to disclose unless the information is specifically requested. Gewin, supra; Altmayer v. City of Daphne, 613 So.2d 366 (Ala.1993); Bama Budweiser of Montgomery, Inc. v. Anheuser-Busch, Inc., 611 So.2d 238 (Ala.1992).
That leaves us with the question whether the Court of Civil Appeals was correct in holding that Bramlett's inquiry of the Adamson salesperson was sufficient to impose on Adamson a duty to disclose the existence of the commission agreement between Adamson and FMCC. After much consideration, we disagree with the Court of Civil Appeals, and hold that Adamson did not have a duty to disclose the existence of the commission agreement to Bramlett. First, we believe that Bramlett's question, asking why the interest rate was so high, was not specific enough to impose such a duty. The Adamson salesperson answered that general question truthfully  the interest rate offered to Bramlett by Adamson was higher than it would have been to another purchaser of the same automobile solely because of Bramlett's poor credit history; Bramlett made no allegation, and presented no evidence, that another purchaser's interest rate would not have included the 3% commission for Adamson.
Moreover, given the general nature of Bramlett's question, we believe it would be unreasonable to require that the Adamson salesperson reveal every factor that went into determining the exact interest rate offered to Bramlett. As Judge Thigpen noted in his dissenting opinion, "[t]he ultimate rate that Bramlett was offered was affected by a variety of factors, including the prime rate, the Federal Reserve Board's rate setting policy and procedure, the interest rates charged by other lenders, Bramlett's poor credit history, etc." 717 So.2d at 779. While the law still requires, even in the present adversarial world of commercial transactions, that direct questions be responded to truthfully and accurately, the law also generally allows a business to keep confidential its internal operating procedures. See, e.g., Norman v. Amoco Oil Co., 558 So.2d 903 (Ala.1990); King v. National Foundation Life Ins. Co., 541 So.2d 502 (Ala.1989); Surrett v. TIG Premier Ins. Co., 869 F.Supp. 919 (M.D.Ala.1994) (applying Alabama law). Although this case specifically involves lenders and interest rates, interest is nothing other than the cost or price of borrowing money. Black's Law Dictionary, 812 (6th ed.1990). The 3% commission agreement at issue here is nothing more than Adamson's profit on the loan transaction, which had a wholesale price and a retail price. We decline to recognize a common law duty that would require the seller of a good or service, absent special circumstances, to reveal to its purchaser a detailed breakdown of how the seller derived the sales price of the good or service, including the amount of profit to be earned on the sale.
The Court of Civil Appeals erred in reversing the summary judgment on Bramlett's fraudulent suppression claim. As to that claim, the judgment of the Court of Civil Appeals is reversed.

IV. Fraudulent Misrepresentation

A.
Bramlett contends the Court of Civil Appeals correctly reversed the summary judgment as to his fraudulent misrepresentation claim. He argues that Adamson and FMCC fraudulently misrepresented to him that the 15.49% interest rate was the "best" or "most attractive" financing available. In support of this claim he simply argues that he presented sufficient evidence creating genuine issues of material fact proper for determination by a jury.

*788 B.
Adamson contends that Bramlett's misrepresentation claim must fail because, it says, any reliance by Bramlett on the salesperson's statement regarding the nature of the interest rate was not justifiable.[7] First, Adamson argues that it is not justifiable for a person as experienced as Bramlett was in purchasing, selling, and financing automobiles to rely on the alleged misrepresentation. Adamson notes that only a month earlier Bramlett had financed an automobile purchase at a significantly lower interest rate than the one offered by Adamson's salesperson, and Adamson points out that Bramlett knew he could shop around for financing. Adamson argues that, given those facts, any reliance by Bramlett on the salesperson's statement was not justifiable.

C.
FMCC first argues that it cannot be held liable for any alleged misrepresentation by Adamson because, it says, as a matter of law Adamson was not its agent. FMCC makes the same argument as is noted in Section III. C. above. It also argues than the alleged misrepresentation by the Adamson salesperson was merely sales puffery that will not support a fraud claim.

D.
The elements of the tort of fraudulent misrepresentation, as of the time Bramlett's complaint was filed, were (1) a false representation, (2) of an existing material fact, (3) that is justifiably relied upon,[8] and (4) damage resulting as a proximate cause. Spring Hill Lighting & Supply Co. v. Square D Co., 662 So.2d 1141 (Ala.1995); Pinyan v. Community Bank, 644 So.2d 919 (Ala.1994). The Court of Civil Appeals reversed the summary judgment as to this claim, based on its conclusion that questions of material fact existed as to the elements of this claim and that those questions required resolution by a trier of fact.
After thoroughly reviewing Bramlett's deposition testimony, we disagree with the Court of Civil Appeals. Bramlett testified as follows regarding the allegedly false representation:
"[Q.]: Well, did you tell them that you wanted it financed?
"[A.]: Yes. I told them I needed it financed.
"[Q.]: Did you direct them to any particular finance company?
"[A.]: I told them I was in good standing with Ford [Motor Credit Company] at the time.
"[Q.]: Is that because you had previously financed a car with Ford Credit?
"[A.]: Yes.
"[Q.]: The one, the Long-Lewis 1993 vehicle, the [Crown Victoria]?
"[A.]: Right. Figured it would be easier to go ahead and settle it that way.
"[Q.]: Was anything else said about financing prior to you going back to your office?
"[A.]: The only thing he said was that they would check the best rate....
"....
"[Q.]: ... You wanted it with Ford Credit with the best rate?
"[A.]: Right.
"....
"[Q.]: On the phone call, did he  did y'all discuss terms anymore?
"[A.]: He said he [came] up with the best deal with Ford."
Bramlett's argument relating to this claim implies that he requested Adamson to survey available automobile financing companies and to obtain for him the best rate possible, and that Adamson chose FMCC for Bramlett because of Adamson's commission agreement with FMCC, then told Bramlett that it had gotten him the best interest rate available. However, his deposition testimony does not support such an implication. In contrast, it indicates that Bramlett wanted Adamson's *789 assistance in obtaining financing for his automobile purchase, that he chose FMCC to be his creditor, that he wanted the best financing rate FMCC could offer through Adamson, and that Adamson represented to him that the rate it offered was the best it could obtain with FMCC. Given this clear view of the facts, we believe Bramlett failed to present substantial evidence creating a genuine issue of material fact as to whether the representation that the interest rate was the best available to Bramlett through FMCC was a false representation. Clearly, Adamson did not owe Bramlett a duty to offer him financing with FMCC, to forgo its existing commission agreement with FMCC, and, thus, to offer him an interest rate that was 3% lower than it would offer another customer with the same background as Bramlett.
Further, we conclude that any reliance by Bramlett on the alleged false statement was not justifiable. Under the "justifiable reliance standard" a plaintiff may not close his eyes to avoid discovering the truth. Hickox v. Stover, 551 So.2d 259 (Ala. 1989). Given Bramlett's sophistication in buying, selling, and financing automobiles, and given that only a month earlier Bramlett had obtained financing for another used automobile at the significantly lower interest rate of 12.75%, we conclude that he would have had to "close his eyes" to his own very recent knowledge in order to rely on Adamson's representation. Accordingly, we conclude that any reliance on his part was not justifiable, as a matter of law.
We reverse the judgment of the Court of Civil Appeals reversing the summary judgment as to Bramlett's fraudulent misrepresentation claim.

V. Civil Conspiracy

Because the summary judgment was properly entered on the fraudulent suppression and fraudulent misrepresentation claims, there was no valid claim of underlying wrong that could support Bramlett's civil conspiracy claim. Therefore, the summary judgment was also proper as to that claim; as to that claim the judgment of the Court of Civil Appeals is reversed.

VI. Conclusion

The judgment of the Court of Civil Appeals is reversed, and we remand this cause to that court for an order or proceedings consistent with this opinion.
REVERSED AND REMANDED.
HOOPER, C.J., and MADDOX, HOUSTON, COOK, and SEE, JJ., concur.
SHORES, J., concurs in the result.
SHORES, Justice (concurring in the result).
It is clear that the majority opinion holds that the existence or not of a duty to disclose is a question of law. The Court of Civil Appeals held, incorrectly, that the existence of a duty to disclose was a question of fact. The Court of Civil Appeals' opinion is quoted in the majority opinion as stating:
"Under the facts of the present case, we do not address whether Adamson had a duty to disclose the commission in the absence of any inquiry. We hold that Bramlett's [testimony that he asked] why the finance charge was so high is substantial evidence from which the trier of fact could infer that Adamson had a duty to disclose the full nature of Adamson's commission agreement with FMCC. A duty to disclose can arise from a request for information. One who responds to an inquiry has the duty to speak the entire truth."
717 So.2d at 776 (citations omitted; emphasis original).
Today's majority opinion states that a duty on the part of one to disclose a material fact to another may be based on either a statute or the common law. While that is a correct statement, the existence or not of the duty to disclose is still a question of law. See Berkel & Co. Contractors v. Providence Hosp., 454 So.2d 496, 506 (Ala.1984), citing Hand v. Butts, 289 Ala. 653, 270 So.2d 789 (1972), for the proposition that the question whether a duty exists is a question of law.
The majority disagrees with the Court of Civil Appeals' conclusion that Bramlett's inquiry of the Adamson salesperson was sufficient to impose a duty to disclose the existence of the commission agreement between *790 Adamson and FMCC. This Court, therefore, declines to recognize a common law duty that would require the seller of a good or service, absent special circumstances, to provide a purchaser a detailed breakdown of how the seller derived the sales price of the good or service, including the amount of profit to be earned on the sale, or else be liable for fraud.
I agree with the majority that in this case the trial court made the correct legal decision in holding that there was no duty. The failure to disclose one's superior knowledge, when one is bargaining at arm's length, does not violate a duty of disclosure or constitute fraud. Berkel & Co. Contractors v. Providence Hosp., supra.
NOTES
[1] Although the Court of Civil Appeals held that FMCC's application for rehearing was untimely, we hold that FMCC's substantial compliance with Rule 25(a), Ala.R.App.P, was sufficient in this case.
[2] Bramlett also understood that the financing rate for a used automobile is generally higher than that for a program car or for a new automobile.
[3] Since Bramlett's bankruptcy, he had had credit requests turned down by several credit card companies and mortgage companies and by one bank.
[4] Ala.Code 1975, § 5-19-6(c), provides, in relevant part:

"[T]here is no obligation or duty under this chapter to disclose to a debtor any agreement to assign or otherwise transfer a consumer credit transaction contract at a discount or that the assignee of, or person who funded, the consumer credit transaction agreed or may agree to pay the creditor or other person who originated the consumer credit transaction all or a portion of the prepaid finance charges and other fees and/or a portion of the finance charge to be paid by the debtor over the term of the transaction and/or other compensation irrespective of how the compensation is determined or described."
Section 5-19-6(d) provides that subsection (c) retroactively applies to consumer credit transactions entered into before February 24, 1994, such as the transaction at issue in this appeal.
[5] We distinguish this case from Smith v. First Family Financial Services, Inc., 626 So.2d 1266 (Ala.1993). In Smith, we held that the defendant real estate mortgage lender had a duty to disclose to the borrowers the existence of a 2% mortgage-broker origination fee. The factual difference between Smith and this case is that in Smith the defendant issued to the borrowers a commitment to lend them the money at an interest rate of 16%. Later, the 2% broker fee ("yield spread premium") was added to the quoted rate to increase the effective rate of interest to 18%. This interest rate increase was not properly disclosed to the borrowers. However, in this case there is no allegation that Bramlett was not fully informed of the interest rate he was being charged on his automobile purchase loan or of the total cost of the loan.
[6] We emphasize Bramlett has not alleged that he was not fully informed of the interest rate he would pay on the loan before he agreed to accept that rate, or that he was not fully informed of the total he would pay in interest charges.
[7] The complaint in this case was filed before this Court decided Foremost Ins. Co. v. Parham, 693 So.2d 409 (Ala.1997), which overruled Hickox v. Stover, 551 So.2d 259 (Ala.1989), and replaced the "justifiable reliance standard" in fraud cases with the "reasonable reliance standard."
[8] See fn.7.