GULF STATES STEEL, INC., Plaintiff,

v.

Richard J. LIPTON, et al., Defendants.

Civ. A. No. 89–AR–0715–M.

United States District Court,
N.D. Alabama,
Middle Division.

Aug. 2, 1990.

Affirmed, 934 F.2d 1265.

Richard T. Cunningham, Timothy H. Hanna, Amer Cunningham Brennan, Akron, Ohio, Mac B. Greaves, Sadler Sullivan Herring & Sharp, Birmingham, Ala., for plaintiff.

Lee H. Zell, Berkowitz Lefkovits Isom & Kushner, Birmingham, Ala., H. Wayne Phears, Steve J. Davis, Charles A. Smith, Phears & Davis, Norcross, Ga., for defendants.

## MEMORANDUM OPINION

ACKER, District Judge.

The court has for consideration the motion for summary judgment and the amended motion for summary judgment filed by defendants, Richard J. Lipton and George H. Lipton, and the motion for voluntary dismissal without prejudice filed by plaintiff, Gulf States Steel, Inc. (GSS).

## PERTINENT UNDISPUTED FACTS

On January 31, 1986 GSS, which maintains its principal place of business in Alabama, purchased a steel mill in Gadsden that formerly had been owned by LTV, Inc. In acquiring the steel mill from LTV, GSS also acquired some of LTV's former customers. One such customer was U.S. Tube, Inc. U.S. Tube was a Georgia corporation with its principal place of business in Alabama. The Liptons, Georgia residents, were the sole shareholders and two of the officers of U.S. Tube and its parent corporation, Oxylance. GSS sold steel to U.S. Tube on credit from February, 1986, to October 14, 1986, without requiring any security or the personal guarantees of defendants. During that time period, U.S. Tube's debt to GSS grew, so much so that GSS eventually removed its offer of credit to U.S. Tube and instituted other payment plans. At no point did GSS secure this obligation with collateral from U.S. Tube.

One GSS employee in particular, Tim McIntyre, was responsible for managing GSS' extension of credit to U.S. Tube. McIntyre also had handled U.S. Tube's account when he worked for LTV. After GSS took over LTV's operations, McIntyre obtained the corporate guarantee of Oxylance for U.S. Tube's debt. McIntyre stated without contradiction that the Liptons and/or U.S. Tube or Oxylance never withheld information relevant to GSS' extension of credit after he had requested such information.

Prior to U.S. Tube's relationship with GSS, U.S. Tube and Oxylance began a complex revolving credit relationship with the Exchange National Bank of Chicago (ENB). The relationship spanned at least three loans, and the obligations to ENB were secured by collateral consisting of the equipment, accounts receivable and inventory of U.S. Tube and Oxylance, certain real estate and the personal guarantees of the Liptons. At least by the summer of 1986, GSS was aware of the relationship between ENB and U.S. Tube.

Between February and September of 1986 several upper-level representatives of GSS had three golf outings with the Liptons. These outings occurred in Florida, Ohio and Alabama. GSS' representatives claim that one defendant made several misrepresentations on the golf course. Specifically, GSS asserts that George Lipton said the equivalent of the following: "Business is good"; "U.S. Tube is profitable"; and "U.S. Tube is making money." GSS claims that all of the statements were false and that all were said for the sole purpose of deceiving GSS into selling more steel to U.S. Tube on credit. Further, GSS necessarily claims that it relied on these statements in its extension of a great amount of credit to U.S. Tube.

In early September 1986, GSS discovered that U.S. Tube's debt to GSS had grown to approximately $3.66 million. GSS also learned that U.S. Tube still owed LTV approximately $2 million for steel delivered before GSS bought the Gadsden plant. GSS, along with some members of the group which owns GSS, began to investigate methods of reducing U.S. Tube's debt. On October 11, a senior representative of the group that owns GSS met with the

Liptons in the Atlanta airport, resulting in what a memorandum of the meeting calls a "general agreement." While U.S. Tube did reduce its debt to around $3.2 million before the end of October, this agreement ultimately proved unworkable. U.S. Tube could not reduce its debt to GSS' satisfaction. Further, in January, 1987 the Liptons refused to guarantee U.S. Tube's debt to GSS personally.

During the time period in which GSS sought to obtain a substantial reduction in U.S. Tube's debt, U.S. Tube's debt to ENB was reduced, but not substantially. On October 24 U.S. Tube owed ENB $4.16 million but had reduced the debt to around $3.48 million by February 1987. At some point, ENB began receiving U.S. Tube's accounts receivable directly. In other words, ENB simply offset payments made for U.S. Tube's accounts receivable toward U.S. Tube's obligation to ENB.

U.S. Tube and Oxylance filed for reorganization under Chapter 11 of the Bankruptcy Code on February 6, 1987. At that time U.S. Tube still owed approximately $2.9 million to GSS and $3.48 million to ENB. During the bankruptcy proceedings, ENB was repaid in full. None of U.S. Tube's debt to GSS, an unsecured creditor, was repaid, however.

GSS filed the instant action on April 26, 1989, basing the court's jurisdiction correctly on diversity of citizenship and alleging in its complaint, as it has been amended, that the Liptons defrauded GSS by making false misrepresentations and/or by concealment, and that the Liptons breached a fiduciary duty owed to GSS as a creditor of their corporation. The complaint contains three more "counts," (a) that defendants' operated their corporations as their alter egos, (b) to pierce the corporate veil, and (c) to impose a constructive trust. Subsequent filings indicate that the alter ego and piercing theories are intended merely to supplement GSS' substantive claims, while GSS maintains that its count for a constructive trust states a viable cause of action standing alone. The Liptons answered the complaint, denying most material allegations, claiming that U.S. Tube's indebtedness to ENB was paid under the supervision of the Bankruptcy Court, and pleading as an affirmative defense, *inter alia,* that GSS' claims are barred by the applicable statutes of limitations.

Discovery proceeded. Defendants filed a motion for summary judgment on May 2, 1990. That motion raised the two-year limitations period of Ala.Code § 6–2–38(*l* ) (Supp.1989) as a defense to all claims asserted that, as a matter of Alabama law, no fiduciary duty existed between defendants and GSS. The Liptons amended their original summary judgment motion to add that GSS' evidence failed to establish a genuine issue of material fact regarding defendants concealment and/or statement of a false material fact and regarding GSS' justifiable reliance on any of defendants' conduct.

The court held a pretrial conference on May 3. At the pretrial it became apparent that it was highly probable that GSS' claims were time-barred, even if the facts relevant to the issues were in dispute. GSS orally mentioned at the pretrial the possibility of transferring the action to the Northern District of Georgia. The Liptons are residents of Georgia, the Georgia court would have had jurisdiction, and Georgia's statute of limitations on fraud claims is four years. The court informed the parties of the Supreme Court's recent decision in *Ferens v. John Deere Co.,* 494 U.S. 516, 110 S.Ct. 1274, 108 L.Ed.2d 443 (1990), which held that in diversity cases the transferee court must apply the limitations period that would have been applied by the transferor court regardless of which party succeeded in having the action transferred. On the basis of *Ferens,* a transfer would not have removed the Alabama limitations issue from the case. It would only have removed the case from a judge whose comments had not been encouraging to plaintiff.

On May 8, 1990, GSS filed its motion pursuant to Rule 41(a), F.R.Civ.P., for a voluntary dismissal without prejudice. GSS tendered the affidavit of Richard T. Cunningham, lead counsel for GSS in this matter, in which he stated that upon the

dismissal of this action he intends to file an identical action in Georgia. The court heard oral argument on the motion for voluntary dismissal at its regular motion docket on May 31. During argument, Cunningham indicated an unwillingness by plaintiff to pay more than $5,000.00 for costs and expenses related to the litigation of this matter in Alabama as a condition to the requested dismissal without prejudice. Subsequently, the court entered an order indicating that the instant motions would be taken under submission by the court simultaneously.

## CONCLUSIONS OF LAW

*Voluntary Dismissal*

 A motion for voluntary dismissal should be granted unless the defendant will suffer plain legal prejudice other than the mere prospect, however certain, of a subsequent lawsuit. *See e.g., LeCompte v. Mr. Chip, Inc.*, 528 F.2d 601 (5th Cir.1976). In considering GSS' motion for voluntary dismissal, the court squarely confronts *McCants v. Ford Motor Co., Inc.*, 781 F.2d 855 (11th Cir.1986), where the Eleventh Circuit held, under the particular facts there relevant, that the loss of a valid statute of limitations defense alone did not constitute sufficient legal prejudice so as to bar a dismissal without prejudice under Rule 41. *But see Phillips v. Ill. Cent. Gulf RR.*, 874 F.2d 984 (5th Cir.1989) (expressly rejecting *McCants* seemingly broad holding). While this court obviously must follow *McCants*, *McCants* does not mandate the entry of a dismissal without prejudice in this case.

*McCants* is significantly different factually from the case at bar. McCants filed suit in a federal court in Alabama because of an accident that occurred in Mississippi and based her action on Mississippi products liability law. She originally had filed suit within any conceivable limitations period but had sued the wrong party. After discovery revealed her error, she sought leave to amend her original complaint to add Ford. Instead of granting her leave to amend, and after the one-year Alabama limitations period later determined applicable had run, the district court erroneously

dismissed her action without prejudice, apparently without realizing that such a dismissal without prejudice would, in practical effect, constitute a dismissal with prejudice. Shortly thereafter, McCants filed a second suit, this time against Ford. Ford did not plead the statute of limitations in its answer but raised it in an amended answer some eight months after the initiation of the suit and a month before it filed its summary judgment motion. In ruling that the second district court did not abuse its discretion by granting McCants' motion for voluntary dismissal so that she may file suit in Mississippi, which had a longer limitation period, the Eleventh Circuit must have been persuaded to uphold the voluntary dismissal by the inherent unfairness of binding McCants with the erroneous dismissal by the first district court and because of the compounding of the unfairness by Ford's springing of the limitations issue so far into the litigation.

The instant case lacks any similarity with the significant facts of *McCants*—save one. The only similar fact is that motions seeking voluntary dismissals were filed in both cases after the defendants had filed possibly meritorious summary judgment motions in reliance on statutes of limitations. There are many distinguishing facts. First, unlike *McCants*, GSS knew the Liptons, knew of the facts which form the basis of its allegations, and knew the Liptons' relationship with U.S. Tube well over two years before it instituted this action. Second, GSS did not file a timely suit before the instant one. Rather, it waited over two years from the date that the Liptons' corporations filed Chapter 11 proceedings and over two and one-half years after GSS discovered that U.S. Tube owed it a substantial debt. Third, GSS' complaint does not seek redress, at least facially, based on another state's laws. There was no legally sufficient reason to believe that another state's limitations period would apply or save plaintiff. Last, defendants apprised GSS of the possible limitations issue at the earliest possible moment, in its original answer. GSS' counsel admitted in oral argument that it was

aware of the Alabama limitations period at the outset. In contrast to the facts in *McCants*, there simply is no justification either for the delay in filing this action or for GSS' forum selection.

More importantly, defendants' summary judgment motion relies on more than the bar of the statute of limitations. *McCants* cannot be read to require this court to grant GSS' motion and allow GSS to file a second suit in Georgia if the summary judgment motion filed by defendants can successfully attack GSS' claims substantively. Dismissing a possibly meritorious but time-barred case without prejudice so that a litigant may re-file the action in a jurisdiction with a longer limitations period is one thing. Dismissing a case in which no genuine issue of material fact exists without prejudice so that a litigant may re-file the action in another jurisdiction is quite another. GSS' motion for voluntary dismissal will be denied.

Providing reinforcement to the court's conclusion to deny GSS' motion for voluntary dismissal is the refusal of GSS to pay more than $5,000.00 for the costs and expenses associated with litigating this case in Alabama. Under *McCants*, the court is required to fashion an order fairly apportioning costs and expenses as well as restricting proceedings in the subsequently filed action. *McCants*, 781 F.2d at 860–61. It is true that in some cases expenses associated with litigating the first action may be no more than $5,000.00. *McCants v. Ford Motor Company, Inc.*, 789 F.2d 1539 (11th Cir.1986) (affirming district court's imposition of $2,817.50 associated with cost of researching and pressing statute of limitations argument as well as restrictions on discovery in the subsequently filed action). In this case, however, defendants maintained local counsel in addition to their Atlanta counsel. Without the need for reviewing evidentiary material regarding local counsel's fee or his costs and expenses, the court is satisfied that the amount is not insubstantial and would exceed $5,000.00. Additionally, GSS would be required to re-

imburse defendants for *all* costs and expenses related to the limitations issue.[1] That reimbursement would include the respective and proportional portions of all deposition and other discovery expenses (perhaps along with incidental travel, etc., in some instances) necessary to develop factual support for the limitations argument, as well as legal research concerning the presentment of the argument. In sum, GSS' flat-footed refusal to pay any more than $5,000.00 in accordance with any decision of the court to dismiss its action without prejudice would not be consistent with what this court would likely consider the reasonable reimbursement of costs and expenses, especially in light of GSS' initial decision to litigate in this forum with full knowledge of the Alabama limitations period.

### Summary Judgment

■ This court is guided in its application of Rule 56 principles by two Supreme Court decisions. In *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the Court defined the respective burdens facing the parties on motions for summary judgment. The essence of *Catrett* is that the party bearing the burden of proof at trial must produce at least some evidence supporting each essential element of his cause of action in order to defeat a summary judgment motion which accurately asserts as one of its grounds that the party bearing the burden lacks such evidence. *Id.* at 327–29, 106 S.Ct. at 2555. In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the Court enunciated the evidentiary standard by which the ordinary summary judgment motion must be measured. A district court's function at the summary judgment stage is not to weigh the evidence but only to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 243, 106 S.Ct. at 2511–12. The court will

---

1. The court also would consider it appropriate to tax GSS with costs and expenses related to

the motion for voluntary dismissal if such motion were to be granted.

view the record in the light most favorable to GSS.

*Fraud*

██] GSS' fraud claim is due to be dismissed when placed under substantive Rule 56 analysis. First, GSS has failed to allege and/or offer evidence of any false statements made by Richard Lipton. Obviously, any fraud claim against Richard Lipton must be dismissed. Second, as to George Lipton, it is simply beyond credulity that a sophisticated corporation dealing at arms' length with another corporation could reasonably rely on such general comments as George Lipton's comments to extend over $3 million of credit, especially when the comments were made in such casual circumstances and when the first corporation had the ability to obtain more concrete financial data on the second corporation and to demand personal guarantees. *See Wilson v. Brown*, 496 So.2d 756, 759 (Ala. 1986); *Torres v. State Farm Fire & Casualty Co.*, 438 So.2d 757 (Ala.1983).[2]

This court ordinarily would not grant summary judgment on an issue in any way involving "reasonableness." But, in this case, GSS claims that it extended over $3 million in credit to U.S. Tube merely and solely in reliance on George Lipton's oral statements, made on a golf course, that "business is good," and that "his business

is profitable," rather than requiring any proof of U.S. Tube's financial condition. A necessary element of the tort of fraud is that the plaintiff must have *reasonably* relied on the misrepresentation to his detriment. The principle is stated by the Supreme Court of Alabama as follows:

> Because it is the policy of courts not only to discourage fraud but also to discourage negligence and inattention to one's own interests, the right of reliance comes with a concomitant duty on the part of the plaintiffs to exercise some measure of precaution to safeguard their interests. In order to recover for misrepresentation, the plaintiffs' reliance must, therefore, have been *reasonable* under the circumstances. If the circumstances are such that a reasonably prudent person who exercised ordinary care would have discovered the true facts, the plaintiffs should not recover. *Bedwell Lumber Co. v. T & T Corporation*, 386 So.2d 413, 415 (Ala.1980).
>
> > "If the purchaser blindly trusts, where he should not, and closes his eyes where ordinary diligence requires him to see, he is willingly deceived, and the maxim applies, '*volunti non fit injuria*'."

*Munroe v. Pritchett*, 16 Ala. 785, 789 (1849) (emphasis supplied). *Torres*, 438 So.2d at 758, 759.[3]

---

**2.** GSS contends that Alabama law should not apply to the entirety of the fraud claim. It notes that the misrepresentations were alleged to have occurred in three states: Alabama, Ohio and Florida. Under Alabama choice of law rules, however, it is not the site of the alleged tortious act that is relevant but the site of the injury, or the site of the event that created the right to sue. *See Alabama Great Southern R.R. Co. v. Carroll,* 97 Ala. 126, 11 So. 803 (1892). It is undisputed that the "last necessary act"—the extension of credit in reliance on the alleged misrepresentations—occurred in Alabama. Therefore, Alabama law controls. *Compare Brown–Marx Assoc., Ltd. v. Emigrant Sav. Bank,* 703 F.2d 1361, 1370–71 (11th Cir.1983) (affirming district court which applied Alabama law to alleged misrepresentations that were made in New York) with *Abercrombie v. Nashville Auto Auction,* 541 So.2d 516 (Ala.1989) (noting that Tennessee law should have been applied where entire transaction—including reliance on alleged misrepresentations—occurred in Tennessee).

**3.** The court is aware that the Supreme Court of Alabama recently and partially abrogated the application of the "reasonable reliance" standard as that standard has been understood and applied in this state for years. *See Hickox v. Stover,* 551 So.2d 259, 263 (Ala.1989) (quoting standard invented in the special concurrence of Chief Justice Hornsby in *Southern States Ford, Inc. v. Proctor,* 541 So.2d 1081, 1091–92 (Ala. 1989)). There is no doubt, however, that *Torres* still applies in situations such as the one in the instance case where the alleged fraud relates to a commercial transaction. First, Chief Justice Hornsby, in his special concurrence that provided the genesis of the new standard, stated that:

> *Bedwell Lumber* [and *Torres* ], with [their] "reasonable reliance" standard, [were] not incorrectly decided. [Those] case[s], however, dealt with a dispute among the parties to a *commercial* transaction, thus parties with presumably equal bargaining power ...; in that case, the objective standard of "reasonable reliance" was correctly employed. That stan-

There can be but one conclusion based on the undisputed surrounding circumstances in this case, and that conclusion is that GSS failed to safeguard its interests. Therefore, any reliance on George Lipton's comments was unjustifiable, i.e., unreasonable.

■■■ Assuming *arguendo* that GSS could be found to have acted reasonably, GSS' fraud claim is nevertheless defeated by the statute of limitations. Alabama law provides two years from the discovery of the alleged fraud within which a fraud claim may be pursued. Ala.Code § 6–2–3 (1988). GSS claims that it did not discover this alleged fraud until it discovered that GSS would not be paid, some time after U.S. Tube and Oxylance filed for bankruptcy.[4] In support of this position, it tenders the affidavit of its president, Jay Gibney, which states and reiterates the hopeful self-judgment that GSS "did not discover until after April 26, 1987 that George Lipton and Richard Lipton had no intention of paying for the steel ..." Whether or not the Liptons intended to pay out of their personal funds for the steel that U.S. Tube purchased has no relevance as to when GSS discovered the alleged fraud that it alleges in its complaint.[5] Gibney's affidavit has absolutely no effect, therefore, on Gibney's prior testimony and the testimony of every other representative of GSS who has been deposed in this matter. The record reflects that GSS became painfully aware of the subject of George Lipton's alleged misrepresentations—U.S. Tube's precarious financial situation—by at least October 1986. Representatives of GSS reviewed U.S. Tube's financial records, toured U.S. Tube's Birmingham facility and even thought of purchasing U.S. Tube. While it may be true that GSS was unaware that it would receive nothing for the steel it sold to U.S. Tube until the termination of the bankruptcy proceedings, that "discovery" is irrelevant to GSS' fraud claim. The record reflects that GSS did discover prior to two years before it filed suit the essential facts that it now alleges and which a reasonable man, if not GSS, would understand to raise the flag of "fraud."

Conspicuous in Gibney's affidavit is the absence of any statement as to when, by an exercise of reasonable diligence, GSS *could* have discovered the fraud. Though the court is convinced that GSS *actually discovered* the pertinent facts more than two years before the suit, even more certainly, GSS *should* have learned of those facts prior to two years before it instituted this action and is now barred. In October 1986 when GSS reviewed U.S. Tube's books, in January 1987 when defendants refused to personally guarantee U.S. Tube's debt, or at least in February 1987 when U.S. Tube filed for bankruptcy, GSS should have learned that U.S. Tube was in poor financial shape and that GSS would have a difficult time recouping the credit it extended. *See Miami Savings & Loan Assoc. v. Mortgage Corp. of the South,* 650 F.2d 1376 (5th Cir. Unit B 1981).

### Breach of Fiduciary Duty

■■■ GSS' breach of fiduciary duty claim has two components, both in the nature of fraud. The first claims that defendants

---

dard, however, should not have subsequently trod into the arena of consumer transactions. *Southern States Ford,* 541 So.2d at 1090 (Hornsby, C.J., concurring specially) (emphasis in original).

Second, *Torres* has never been overruled or limited explicitly by a majority of that court. It remains authoritative.

**4.** GSS also asserts that the statute was tolled by the operation of § 6–2–10 of the Alabama Code. That section, enacted before this century began, tolls the limitations period when the defendant is absent from the state. Because defendants are Georgia residents, GSS claims that § 6–2–10 tolled the limitations period so that the instant action is not time-barred. Directly contrary to GSS' argument, § 6–2–10 *must* be construed in light of modern methods for serving process. *Morton v. Jones,* 486 So.2d 429, 430–31 (Ala. 1986). It is obvious from *Morton* that § 6–2–10 operates only where there have been problems in serving the complaint due to the defendants' absence from the state. Based on the record before the court, § 6–2–10 is therefore irrelevant.

**5.** GSS does not allege that defendants defrauded it by fraudulently promising to pay personally for any steel that U.S. Tube bought but for which U.S. Tube could not pay. Had GSS made such an allegation, the "discovery" documented in Gibney's affidavit would have some relevance. Of course, other problems would then present themselves.

failed to disclose certain facts which, GSS claims, defendants were duty-bound to disclose. The second, based on the afore-mentioned alleged fraud, claims that defendants affirmatively misrepresented certain facts, thus breaching a duty defendants owed to GSS. Notably, GSS never refers the court to the source of this fiduciary duty.[6] The closest relationship which, in some cases, may be the genesis of a fiduciary duty and which bears any similarity to the relationship between GSS and the Liptons is debtor-creditor, and even this relationship is not a good fit. Even so, Alabama law clearly does not imply a fiduciary duty into debtor-creditor relationships. *See Hackney v. First Alabama Bank,* 555 So.2d 97 (Ala.1989); *Baylor v. Jordan,* 445 So.2d 254 (Ala.1984); *see also View–All, Inc. v. United Parcel Service,* 435 So.2d 1198, 1202 (Ala.1983) (holding that a then-existent Alabama statute allowed for an equitable marshaling and administration of assets of insolvent corporations but that action did not depend on fraudulent conduct or lack of good faith).[7] Moreover, GSS has not alleged facts sufficient to transform its relationship with defendants into one in which defendants would have owed GSS a fiduciary duty. Because GSS has failed to demonstrate that defendants owed it a fiduciary duty, its claim for breach of that duty succumbs to defendants' motion for summary judgment.

GSS' breach of fiduciary duty claim also fails due to its untimeliness. As with its fraud claim, GSS had two years from its discovery of the breach within which to file suit. *See Robinson v. Hank Roberts, Inc.,* 514 So.2d 958, 962 (Ala.1987). As noted earlier, GSS discovered that U.S. Tube was in financial trouble at least by October 1986, about two and one-half years before GSS filed this action.[8] It then learned in January of 1987 that the Liptons were not going to pay U.S. Tube's debt. In sum, GSS knew of the facts that it alleges to support Count I over two years before it filed suit. Summary judgment is therefore due to be granted as to the breach of fiduciary duty claim.

*Constructive Trust*

■ The following is a direct quote from GSS' brief on the summary judgment motions:

6. In its brief, GSS argues that the breach of fiduciary duty claim is, in essence, a theory to pierce U.S. Tube's corporate veil and to seek redress from defendants as sole shareholders. It is interesting to note, however, that the corporation whose veil GSS is attempting to pierce has not been named a party to this action.

7. According to GSS, Alabama choice of law rules require the court to apply the law of the state of incorporation to actions to disregard the corporate form. *See Jefferson Pilot Broadcasting Co. v. Hilary & Hogan,* 617 F.2d 133 (5th Cir.1980). GSS then argues that Georgia law, the state of U.S. Tube's incorporation, provides that shareholders, officers and directors of an insolvent corporation are *trustees for creditors* of the corporation and may be held personally liable upon conversion of corporate assets to personal use. *Johnson v. Lipton,* 254 Ga. 326, 328 S.E.2d 533 (1985). Assuming this to be an accurate statement of Georgia and Alabama law, assuming GSS' complaint actually states a theory of piercing *the corporate veil due to* conversion, and assuming a corporate form is a party to this action, GSS still fails to carry its burden under *Catrett* to proffer *any* evidence that the Liptons appropriated corporate assets for their personal use.

8. Assuming that defendants had a duty to pay out of personal funds U.S. Tube's debt to GSS, whether that duty arose out of law or out of an oral statement that defendants would do so (and assuming no statute of frauds), and assuming further that defendants' intent not to pay for the debt is a relevant factor regarding the breach of their alleged duty to pay, GSS claims, in the Gibney affidavit, that it did not discover defendants' intent not to pay for the steel until within two years before it filed suit.

In this instance, Gibney's affidavit does conflict with his deposition testimony and with the deposition testimony of others who testified on GSS' behalf. Gibney's deposition indicates that he became aware of a problem with the U.S. Tube account in August of 1986. Gibney deposition, at 86. Gibney then stated that he began to realize that U.S. Tube's debt might not be repaid a few weeks after he became aware of a problem. *Id.* at 160–62. Further, Gibney admitted in his deposition that defendants refused to execute personal guarantees for U.S. Tube's debt. *Id.* at 119–122. According to David Brennan, defendants refused to execute personal guarantees in January of 1987. Brennan deposition, at 171. At that time, GSS knew or had discovered that defendants had no intention of repaying U.S. Tube's debt, regardless of any prior representations. To the extent it is to the contrary of the above-listed deposition testimony, the court will disregard the affidavit.

"Alabama's statute of limitations to establish a constructive trust is six years under Ala.Code § 6–2–34(9). *Spann v. First National Bank*, 240 Ala. 539, 200 So. 554 (1941)."

According to GSS, this statement shows that its "claim" for constructive trust is not time-barred. GSS' argument, however, assumes that its Count V states a viable "cause of action" when it seeks to establish a constructive trust. Neither the case [9] nor the statute [10] cited by GSS supports its argument. In fact, the court's research has revealed no case in any jurisdiction that supports GSS' argument that constructive trust constitutes a cause of action. Rather, the case law indicates unanimously that a constructive trust is a remedy imposed to prevent the enjoyment of a fraud or of a breach of a fiduciary duty. *E.g., Harris v. Sentry Title Co., Inc.*, 715 F.2d 941 (5th Cir.1983); *Coupounas v. Morad*, 380 So.2d 800 (Ala.1980). In sum, this argument is without any merit, and GSS remains subject to, and is defeated by, the two year limitations period for its chosen and recognized causes of action.

*Conclusion*

For the reasons previously stated, GSS' motion for voluntary dismissal will be denied. Additionally, the court's review of the entire record leads it to the unavoidable conclusion that judgment should be entered in favor of defendants as there is no dispute as to any material fact and they are entitled to judgment as a matter of law. Therefore, defendants motion for summary judgment as amended will be granted.

An appropriate, separate order will be entered.

---

**9.** *Spann* was a contract action which sought the rescission of certain transactions and, *as a remedy*, the imposition of a constructive trust on the proceeds of those transactions. The court applied § 6–2–34(9)'s predecessor in that case because the action was contractual in nature, not because the plaintiff sought to impose a constructive trust.

**10.** The statute provides that the six-year limitations period applies to "[a]ctions upon any simple contract or speciality not specifically enumerated in this section." Ala.Code § 6–2–34(9) (1975). As GSS' brief notes, its action to impose a constructive trust is *ex maleficio* or *ex delicto*, not *ex contractu*. The court fails to comprehend how a contract limitations period can be applied to an action based on fraud.