**Billy GLASS d/b/a B & G Towing, Plaintiff,**

**v.**

**SOUTHERN WRECKER SALES, Etc., Defendant.**

**No. CIV. A. 97–A–135–E.**

United States District Court,
M.D. Alabama,
Eastern Division.

Jan. 9, 1998.

William O. Walton, Opelika, AL, Randall Haynes, Alexander City, AL, for plaintiff.

James W. Porter, II, Birmingham, AL, for defendant.

## MEMORANDUM OPINION

ALBRITTON, District Judge.

### I. INTRODUCTION

This case is before the court on a Motion for Summary Judgment filed by the Defendant, Southern Wrecker Sales, a Division of Augusta Bumper & Glass, Inc. ("Southern Wrecker"), on October 31, 1997.

The Plaintiff, Billy Glass d/b/a B & G Towing ("Glass") originally filed a Complaint in this case in the Circuit Court of Macon County, Alabama. Glass brings a count for fraud and deceit against Southern Wrecker.

On February 6, 1997, Southern Wrecker filed a Notice of Removal, stating that this court has jurisdiction pursuant to 28 U.S.C. § 1441(b) and 28 U.S.C. § 1332. No Motion to Remand was filed in this court.

On February 6, 1997, Southern Wrecker filed an Answer in this case. On October 31, 1997, Southern Wrecker filed a Motion for Summary Judgment, a Brief in Support of the Motion, and a Narrative Statement of Undisputed Facts.

Glass filed a Response to the Motion for Summary Judgment on November 25, 1997, to which Southern Wrecker responded on December 2, 1997. Southern Wrecker also filed a Motion to Strike Inadmissible Testimony on December 2, 1997. Southern Wrecker also filed a Request for Oral Argument on December 9, 1997.[1]

For reasons to be discussed, Southern Wrecker's Motion for Summary Judgment is due to be GRANTED.

### II. FACTS

The submissions of the parties establish the following facts:

---

1. The court finds that the parties have adequately briefed the issues in this case and that the court can decide the issues before it based on the arguments presented. The court, therefore, DENIES the request for oral argument.

Billy Glass is engaged in the commercial towing business. In 1990, Billy Glass opened his own business and currently does business as B & G Towing.

In 1995, Glass was seeking a Chevrolet rollback wrecker. Richard Traugh ("Traugh") represented that he could locate such a truck for Glass and, in fact, later contacted Glass and informed him that he had located a truck. The owner of the truck was Southern Wrecker. Glass drove to Georgia to purchase the rollback wrecker from Southern Wrecker.

In October of 1996, Glass was using the truck when the frame of the truck broke. In December of 1996, the truck was inspected by an Alabama State Trooper and was placed out of service.

The Plaintiff has alleged that he purchased the truck without knowing that the cutting, extension, and welding of the truck had been done in a manner which was unsafe and in violation of regulations of the Federal Department of Transportation. Glass alleges that Southern Wrecker suppressed this information and made other material misrepresentations.

### III. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact,

or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–324.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

### IV. DISCUSSION

#### A. Choice of Law

Southern Wrecker has argued that the substantive law to be applied in this case is the law of the State of Georgia. In determining which law to apply, a federal district court sitting in diversity must apply the choice of law rules of the forum state. *Trumpet Vine Investments v. Union Capital Partners I, Inc.*, 92 F.3d 1110 (11th Cir. 1996). Alabama applies the rule of *lex loci delicti*, which means that Alabama courts apply the law of the state where the injury occurred. *See Fitts v. Minnesota Mining & Manufacturing Co.*, 581 So.2d 819, 820 (Ala. 1991). In other words, it is not the site of the alleged tortious act that is relevant, but the site of the injury, or the site of the event that created the right to sue. *Gulf States Steel, Inc. v. Lipton*, 765 F.Supp. 696, 701 n.

2 (N.D.Ala.1990), *aff'd*, 934 F.2d 1265 (11th Cir.1991).

■ Southern Wrecker has argued that because Glass "actually purchased the tow truck from Southern Wrecker in Georgia, it can be argued that the injury should be deemed to have occurred in Georgia." Brief in Support of Summary Judgment, page 8.

Glass argues in response that the transaction had been agreed to and misrepresentations had been made in Alabama before Glass purchased the truck in Georgia.[2] Glass cites to Eleventh Circuit authority, apparently for the proposition that because a contractual arrangement was made in Alabama, the misrepresentation claims should be governed by Alabama law. *See Brown–Marx Assoc., Ltd. v. Emigrant Savings Bank*, 703 F.2d 1361 (11th Cir.1983). However, the fraud claims in *Brown–Marx* were allegations that the breaches of promises which constituted a breach of contract were fraud, which the court rejected as being allegations which did not state a separate claim for fraud. *See id.* at 1371. In this case, there is no claim for breach of contract and the allegations of fraud relate to misrepresentations which Glass has argued caused him to enter into the contract with Southern Wrecker. Rather than relying on the analysis in *Brown–Marx*, therefore, the court must determine where the injury from the alleged misrepresentation occurred. *See Gulf States Steel, Inc. v. Lipton*, 765 F.Supp. 696 (N.D.Ala.1990)(analyzing where injury occurred based on where last act of misrepresentation claim occurred and citing *Brown–Marx* ).

Southern Wrecker's argument that the alleged injury in this case occurred in Georgia is hinged upon the fact that the truck was purchased there. Southern Wrecker has cited no authority, however, to support an argument that the site of a purchase is the location of an injury from the alleged misrepresentation. Glass has argued that the misrepresentations which were made occurred in Alabama so that the injury occurred in Alabama.

In examining other courts' application of the *lex loci delicti* rule to fraud claims, the court has found that courts consistently conclude that the state where the injury occurred in a fraud claim is the state in which the plaintiff suffered the economic impact. *See Management Science America, Inc. v. NCR Corp.*, 765 F.Supp. 738, 740 (N.D.Ga. 1991)(examining cases from Indiana and Tennessee in determining that "[f]ederal courts ... consistently have considered [fraud] to have been committed in the state where the economic loss occurred and not where the fraudulent misrepresentations were made."); *Steele v. Ellis*, 961 F.Supp. 1458 (D.Kan. 1997); Restatement of Conflict of Laws § 377 (1934). Therefore, the court will look to see in which state any alleged economic impact was felt.

Southern Wrecker has disputed that Glass has suffered any injury at all, pointing to that portion of his deposition in which he states that he did not have documentation of any AAA moves or other moves or tows that he had to turn down because his wrecker was placed out of service. Glass Deposition, page 605. However, as Glass points out in argument to the court, Glass goes on his deposition to say that he had turned down cash calls and had given the business to other wrecker services. *Id.* at page 606. The evidence before the court indicates that Glass' place of business is in Alabama and that economic loss he may have suffered as a result of alleged representations by Southern Wrecker occurred in Alabama. Therefore, the court concludes that Alabama's rule of *lex loci delicti* requires application of Alabama law to the fraud claims in this case.

---

**2.** Glass has also argued that Southern Wrecker ought not to be able to raise the choice of law issue because Southern Wrecker did not raise this issue in its Answer and the deadline for amending pleadings has passed. The parties have not addressed whether the issue of timeliness is a question of state or federal law. The court need not reach this issue, however, finding that Glass has not been prejudiced under either federal or state law by Southern Wrecker's raising this issue in connection with a motion for summary judgment, rather than at trial. *See Semo Aviation, Inc. v. Southeastern Airways Corp.*, 360 So.2d 936 (Ala.1978)(applying an interpretation of federal law in deciding that the two factors relevant to deciding whether party has timely raised choice of law issue is reasonableness of notice to the adversary and closeness of the trial date).

## B. Fraud Claims

### 1. Fraudulent Suppression Claim

Glass has stated in his arguments to the court that Southern Wrecker had a duty to disclose that the truck Glass sought to purchase did not comport with federal regulations and that it was illegal to operate the truck on the highway. Southern Wrecker argues that Glass has failed to establish that there are any questions of material fact with regard to the claim for fraudulent suppression and that it is entitled to judgment as a matter of law.

■ Suppression of a material fact which the party is under an obligation to communicate, either because of a confidential relationship or the particular circumstances of the case constitutes fraudulent concealment. *Ala.Code* § 6–5–102 (1993). Mere silence is not fraudulent unless an obligation to communicate exists. *Id.* The elements of a claim of suppression are (1) a duty to disclose a material fact; (2) concealment or nondisclosure of the material fact by the defendant; (3) inducement of the plaintiff to act or to refrain from acting; and (4) actual damage suffered by the plaintiff as a proximate result. *Palm Harbor Homes, Inc. v. Crawford,* 689 So.2d 3 (Ala.1997).

■ Southern Wrecker argues that there was no duty to disclose a material fact. Southern Wrecker points out that under Alabama law, when the parties to a transaction deal at arm's length with no confidential relations, no duty to disclose arises, unless information is requested. *Trio Broadcasters Inc. v. Ward,* 495 So.2d 621 (Ala.1986). However, an obligation to communicate can be created under particular circumstances, such as the relationship between the parties and the relative knowledge of the parties. *Lowder Realty, Inc. v. Odom,* 495 So.2d 23 (Ala.1986).

■ Southern Wrecker states that Glass has failed to provide evidence of a confidential relationship and that the evidence indicates instead that there was no confidential relationship. Southern Wrecker points to Glass' deposition testimony in which he stated that he inspected the vehicle because he knew it was up to him to protect himself. Glass Deposition, page 219. Southern Wrecker argues that because both Glass and Southern Wrecker were knowledgeable about wreckers and Glass was capable of handling his own affairs, there was no confidential relationship.

Glass first contests that the transaction at issue was an arm's length transaction between Glass and Southern Wrecker. Glass cites to *Wolff v. Allstate Life Insurance Co.,* 985 F.2d 1524 (11th Cir.1993), for the proposition that superior expertise, bargaining power, and knowledge of the suppressed fact create a duty to disclose. Glass argues that in light of the superior bargaining position, the relative unsophistication of Glass, special circumstances exist which would enable a jury to find that Southern Wrecker had a duty to disclose. Glass has stated that he only had a high school degree and took one business administration course and that he had started his own business in 1990. However, Glass also testified that he worked for his brother-in-law in a similar business prior to 1990, and that he had purchased wreckers before. Glass Deposition, pages 105, 170. Glass also had significant welding training and experience. *Id.* at pages 55–56. Even though Glass had limited formal education, the evidence of Glass' experience indicates that he was knowledgeable. The evidence does not indicate, therefore, that a duty to disclose was created based on relative expertise or bargaining power. In addition, even if Southern Wrecker had more knowledge as to the particular modifications which were made to the truck, "superior knowledge of a fact, without more, does not impose upon a party a legal duty to disclose such information." *Surrett v. TIG Premier Ins. Co.,* 869 F.Supp. 919 (M.D.Ala.1994)(citing *Barnes v. Liberty Mut. Ins. Co.,* 468 So.2d 124 (Ala. 1985)).

Glass also argues that a duty to disclose arose because, even though the wrecker was a used vehicle, Southern Wrecker had a duty to disclose unsafe conditions. Southern Wrecker has argued that the same disclosure duty is applied to used vehicles as to real estate; that is, that a seller of used automobiles must only disclose defects that are like-

ly to result in imminent danger from the vehicle's operation. *See Hughes v. Hertz Corp.,* 670 So.2d 882 (Ala.1995). Glass contends that there is evidence of imminent danger in this case. He states that the truck frame could have broken while the wrecker was in operation, rather than while the truck was stationary on the side of the road, and could have caused serious injury.

The Alabama Supreme Court emphasized in *Hughes,* however, that even if an undisclosed defect in a car can put the purchaser in imminent danger, there is no duty to disclose if the seller was not aware of the defect. *Hughes,* 670 So.2d at 887. Glass has clarified in his submissions to the court that he has not sought to rely on the fact that the truck was modified as the basis of his claims, but has instead alleged that Southern Wrecker had a duty to disclose that the truck had been modified in a way which violated the federal regulations.[3] In other words, as framed by the plaintiff, the issue is not whether Southern Wrecker should have disclosed that the truck had been modified, but whether Southern Wrecker knew and should have disclosed that the truck had been modified in a manner which violated federal law.[4]

Southern Wrecker has argued that it had no duty to disclose untrue information and that it had no knowledge that the modifications were a violation of federal law. Southern Wrecker also states that it had no knowledge that the wrecker would be unsuitable for normal commercial towing purposes. Instead, Southern Wrecker argues and cites to evidence to support its argument that the modifications made did not violate federal law. Southern Wrecker states that it modified the wrecker by installing a kit pursuant to the manufacturer's instructions so that it did not conceal a fact about which it had knowledge. Russell Deposition, page 30.

Glass has argued that Southern Wrecker does not have to have actual knowledge of the information suppressed because Alabama law only requires that a representation be made with reckless disregard for its truth. According to Glass, because Southern Wrecker did not have an employee whose responsibility it was to ensure that federal regulations were complied with during modifications, Southern Wrecker was reckless with regard to whether the regulations were met. In support of this argument, Glass has cited to Alabama precedent recognizing that a fraud claim can be based upon willful or reckless representations. *See e.g., Spivey v. Southeastern Car and Truck Rentals, Inc.,* 591 So.2d 1, 3 (Ala.1991).

■ The precedent cited by Glass, however, applies to claims of misrepresentation, not suppression. *See id.* An action for suppression will lie only if the defendant actually knows the fact alleged to be suppressed. *McGarry v. Flournoy,* 624 So.2d 1359 (Ala. 1993). In addressing an argument that a seller of a used car should have known of a defect in the car within the context of a suppression claim, the Alabama Supreme Court stated that this argument was unavailing because of the lack of evidence that the seller knew of the alleged damage. *Id.* at 1362.

■ The court emphasizes that Glass has argued that the facts which were suppressed from him were that the wrecking truck was modified in a manner which violated federal regulations and that the truck was unsafe to operate under these regulations. The allegation is not that Southern Wrecker had a duty to disclose that the truck had been modified at all, nor likely could it be, since Glass had admitted that he knew the truck frame had been extended. Glass has failed to present evidence which would allow a reasonable jury to conclude that Southern Wrecker knew that the extension of the truck frame was done in violation of federal law. Southern

---

**3.** Glass has pointed to a portion of the Code of Federal Regulations which states that frame rail flanges between axles shall not be bent, cut, or notched, except as specified by the manufacturer. *See* 49 C.F.R. § 393.201.

**4.** Southern Wrecker has filed a Motion to Strike Inadmissible Testimony as to Glass' statements that he was told by employees of Naley Trucking

that his wrecker had been modified in violation of federal regulations. The court has not considered this testimony since the court finds no evidence of suppressed facts, and therefore, need not address whether there was a violation of the regulation. Therefore, the Motion to Strike is DENIED *as moot.*

Wrecker, on the other hand, has presented evidence and continues to argue that the modifications made were not in violation of federal law. Whether or not the modifications actually violated federal law, there is no evidence before this court that Southern Wrecker was aware of any violation. Furthermore, if there were a finding of violation of federal law, the evidence provided to the court would only support an additional finding that Southern Wrecker is incorrect in its interpretation of the regulation, not that it was aware of any violation. Even assuming that Southern Wrecker was mistaken in its interpretation of federal law, "[u]nder Alabama law, mistake of law is generally not actionable fraud." *Epps Aircraft, Inc. v. Exxon Corp.*, 859 F.Supp. 533, 537 (M.D.Ala. 1993), *aff'd, Tatum v. Walker County Bd. of Educ.*, 30 F.3d 1499 (11th Cir.1994). In addition, to the extent that Glass is arguing that Southern Wrecker had a duty to disclose the existence of the applicable regulations by which Glass might then have determined that there was a violation of the law, this argument is also unavailing. *See Henson v. Estes Health Care Center, Inc.*, 439 So.2d 74, 75 (Ala.1983)("there is no duty to disclose laws which are accessible to and presumed to be known by all."). Therefore, even if a duty was imposed upon Southern Wrecker to disclose material facts to Glass, there is no evidence which would allow a reasonable jury to conclude that Southern Wrecker breached a duty to disclose facts to Glass.

### 2. Fraudulent Misrepresentation Claim

■ Under Alabama law at the time that Glass filed his Complaint,[5] a claim for fraudulent misrepresentation requires proof of (1) a false representation, (2) of an existing material fact, (3) that is justifiably relied upon, and (4) damage resulting as a proximate cause. *Hicks v. Globe Life & Accident Ins.*, 584 So.2d 458 (Ala.1991). Glass has alleged that Traugh, whom Glass alleges is an agent of Southern Wrecker, made false representations about the wrecking truck which Glass ultimately purchased. In other words, Glass seeks to hold Southern Wrecker liable for fraudulent misrepresentation based upon the actions of Traugh.

Southern Wrecker has argued that it made no representations other than to tell Glass that it would sell him the truck. Southern Wrecker challenges Glass' ability to show that any representation was made by Southern Wrecker or, assuming Southern Wrecker made a representation, that the representation was not true. According to Southern Wrecker, Traugh was not a sales representative of Southern Wrecker and was not acting as Southern Wrecker's agent during the transaction in question. Southern Wrecker has provided evidence that Traugh is not a manufacturer's representative for Southern Wrecker, and is apparently a person who buys and re-sells parts. Francis Geoffrey Russell Deposition, page 46.

■ Glass has responded that although Southern Wrecker disputes that Traugh was its agent, there is a question of fact as to the agency relationship between Traugh and Southern Wrecker. The court notes that under Alabama law, the question of an agency relationship generally is determined by the trier of fact. *See Cheatham v. General Motors Corp.*, 456 So.2d 1101 (Ala.Civ.App. 1984). However, Glass still must meet his burden of pointing to evidence which would allow a reasonable fact finder to conclude that there is an agency relationship. *Wood v. Shell Oil Company*, 495 So.2d 1034 (Ala. 1986).

Glass has pointed to evidence which he argues indicates that Traugh and Southern Wrecker had an agency relationship. Glass lists as pertinent facts that Traugh (1) arranged for the sale of a vehicle owned by Southern Wrecker to Robert Tyson, Billy Glass' brother-in-law, (2) arranged for the sale of a Southern Wrecker vehicle to Ernest Harrison, (3) arranged for the sale of a Southern Wrecker vehicle to Glass and nego-

---

**5.** The Alabama Supreme Court changed the standard in fraud cases from justifiable reliance to reasonable reliance in *Foremost Insurance Company v. Parham*, 693 So.2d 409 (Ala.1997). However, the Alabama Supreme Court applies this standard to cases filed after March 14, 1997. *Id.* at 421.

tiated the value of the trade-in,[6] (4) had a photograph of a vehicle Southern Wrecker had for sale. Glass also testified that Traugh told Glass that Traugh was an agent of Southern Wrecker. Glass also testified in deposition that when he asked Traugh about finding a rollback wrecker, Traugh called the Sales Manager of Southern Wrecker, Creed Byrd, and that Creed Byrd said that he did not have what Glass wanted. Glass Deposition, pages 244, 246. Traugh later called Glass and told him that Traugh had found a truck which would fit what Glass wanted. At a later point, Traugh called Creed Byrd and then told Glass that the wrecker was his and that he could drive over and pick it up. *Id.* at 254. According to Glass, Traugh's actions rise far above the level of a customer of Southern Wrecker to that of an agent.

The court notes first that although Glass has broadly stated that Traugh arranged for sales from Southern Wrecker in the past and for other customers, including Glass' brother-in-law, Glass explained in his deposition that when his brother-in-law would request a part from Traugh, Traugh would look to see if he had it on his truck and if he did not, he would place a call to Southern Wrecker. *Id.*, pages 127–28. The parts would then be sent from Southern Wrecker. *Id.* at 128. The evidence presented would allow for a conclusion to be drawn that Traugh placed orders with Southern Wrecker on behalf of persons like Glass, but there is no indication as to what, if any, control Southern Wrecker had over these purchases or over Traugh's business.

 Under Alabama law, the test of agency is the right of control, whether exercised or not. *Brown v. Commercial Dispatch Publishing Co.*, 504 So.2d 245 (Ala. 1987). For one to be an agent, the other party must retain the right to direct the manner in which the business shall be done, as well as the results to be accomplished, or, in other words, not only what shall be done, but how it shall be done. *Id.* at 246. "Control must be proven; and proof of control requires more than proof of a mere right to

determine if the person claimed to be an agent is conforming to the requirements of a contract." *Malmberg v. American Honda Motor Company, Inc.*, 644 So.2d 888 (Ala. 1994).

 The court finds the reasoning of *Malmberg v. American Honda Motor Company*, 644 So.2d 888 (Ala.1994), to be applicable in this case as to the issue of an express agency relationship. In *Malmberg*, a local dealership made representations as to what a warranty from the car manufacturer would cover. The purchaser of the car said that she relied on these representations and the presence of the manufacturer's brochures in the dealership. The court noted that, under the dealership agreement, the manufacturer reserved the right to inspect the dealership to determine if it was complying with the agreement, but did not provide day-to-day supervision nor determine how the dealership was to comply with the agreement. *Id.* at 890. The court found that this evidence did not indicate that the manufacturer retained the right of control. *Id.* The Alabama Supreme Court has also held that there was no express agency relationship even when a purported agent performs a task at the request of the principal, if there is no substantial evidence that the principal retained any control of the action of the purported agent. *See Gist v. Vulcan Oil Co.*, 640 So.2d 940 (Ala.1994).

 In this case, there is no evidence that Southern Wrecker provided day-to-day supervision or determined how Traugh was to conduct his business. Although Glass has pointed to evidence which he argues indicates that Traugh was acting on behalf of Southern Wrecker, there is no evidence from which to draw a conclusion that Southern Wrecker had the right to control the manner in which Traugh conducted business. Therefore, the court finds that Glass has failed to provide evidence sufficient to raise a question of fact as to the existence of an express agency

---

6. Although it is not clear from Glass' deposition, it appears that Glass testified that Traugh told him what the trade-in would be worth and then Southern Wrecker gave Glass that amount of money for his wrecker. There is, however, no evidence that Southern Wrecker knew that the amount of money was an estimate by Traugh, or that it considered itself to be bound by Traugh's estimate of the value of the trade-in wrecker.

relationship. *See e.g. Matsumura v. Eilert,* 74 Wash.2d 362, 444 P.2d 806, 809 (1968)(no agency relationship found between intermediary and seller where intermediary not acting under control of seller).

Glass argues that even if the evidence he has provided does not raise a question of fact as to actual agency, the evidence raises a question of fact as to apparent authority. The court reiterates that although summary judgment on the issue of agency is generally considered to be inappropriate by Alabama courts, Alabama courts also recognize that agency may not be presumed; "the party asserting it has the burden of adducing sufficient evidence to prove its existence." *Wood,* 495 So.2d at 1035.

Under Alabama law, " 'apparent authority' is such authority as a principal knowingly permits an agent to assume or holds him out as possessing." *American Standard Credit, Inc. v. National Cement Co.,* 643 F.2d 248, 267 (5th Cir.1981). The doctrine of apparent authority is based upon the actions of the principal, not those of the agent. *Malmberg,* 644 So.2d at 891. Apparent authority is created when the principal holds the agent out to a third party as having the authority upon which the agent acts, not upon what one thinks an agent's authority might be or what the agent holds out his authority to be. *Id.* For apparent authority, "either the principal must intend to cause the third person to believe that the agent is authorized to act for him, or he should realize that his conduct is likely to create such a belief...." *Restatement (Second) of Agency* § 27 Comment (a) (1958).

Glass has stated that Traugh told Glass that Traugh was an agent of Southern Wrecker. However, the acts of an alleged agent cannot form the basis for a finding of apparent authority. *Bird v. Auto Owners Ins. Co.,* 572 So.2d 394 (Ala.1990). "Representations of the agent cannot be the basis for a finding of apparent authority." *Johnson v. Shenandoah Life Ins. Co.,* 291 Ala. 389, 281 So.2d 636, 641 (1973). Therefore, assuming that Traugh represented that he was a salesperson for Southern Wrecker, his statements are not sufficient to establish ap-

parent authority. In addition, although Glass stated in his deposition that he always thought Traugh worked "straight for Southern Wrecker," he also stated that after he went into business for himself, he was aware that Traugh had his own business in Columbus, Georgia. *See* Glass Deposition, page 126.

Southern Wrecker argues that there is no evidence that Southern Wrecker held Traugh out as possessing authority. According to Southern Wrecker, even if Traugh told Glass that he was a salesman for Southern Wrecker, there is no evidence that Southern Wrecker did any act to represent that Traugh had authority or any evidence that Southern Wrecker ever had an opportunity to deny that Traugh had authority. In other words, Southern Wrecker appears to argue that even drawing all reasonable inferences in favor of Glass, there is no evidence that Southern Wrecker performed any action indicating that Traugh had authority, or failed to act in light of knowledge that Glass thought Traugh had authority, to act on behalf of Southern Wrecker.

The court recognizes that, under Alabama law, a principal may vest his agent with apparent authority to perform an act by omission as well as commission, and such authority is implied where the principal passively permits the agent to appear to a third person to have the authority to act on his behalf. *Treadwell Ford, Inc. v. Courtesy Auto Brokers, Inc.,* 426 So.2d 859 (Ala.Civ. App.1983). Even under this principle, however, Alabama courts look for evidence of an act, either express or implied, by the principal which could give "color to any authority" on behalf of the purported agent. *Assured Growth Corp. v. Tomberlin,* 334 So.2d 918 (Ala.Civ.App.1976).

This case is unlike cases such as *Malmberg,* where the principal provided training and instructions and allowed the purported agent to display its logo on signs, literature, and brochures. *See Malmberg,* 644 So.2d at 891. In this case, there is no evidence that Southern Wrecker allowed Traugh to display any items with Southern Wrecker's name or logo on it, or that Southern Wrecker instructed Traugh. In fact, the evidence pre-

sented to the court includes testimony from Glass that Traugh drove a regular van, that Traugh did not have any labels, and that the van had no writing on its side. Glass Deposition, pages 128–29.

In this case, the evidence is not sufficient to raise a question of fact as to whether the purported principal permitted the agent to appear to act on its behalf. The evidence pointed to by Glass concerns transactions between Glass or other customers and Southern Wrecker in which Traugh was a participant. The court has not been provided details of purchases of wreckers by other customers. The details of the purchase of the wrecker by Glass include facts that Traugh called a Southern Wrecker representative to determine if Southern Wrecker had a suitable vehicle, contacted Glass when a vehicle was found, and set up the time at which Glass was to purchase the vehicle. There is also evidence, previously discussed, of other transactions where Traugh did not have a part in his van and called Southern Wrecker, apparently to order the required part. These actions on the part of Traugh may have caused Glass to think that Traugh worked for Southern Wrecker, but the relevant inquiry is whether any actions, or inaction, on the part of Southern Wrecker created this impression. Assuming that Traugh was holding himself out as a Southern Wrecker agent, there is no evidence that Southern Wrecker had any knowledge that Traugh had represented that he was an agent of Southern Wrecker. There is insufficient evidence from which to conclude that Southern Wrecker had an opportunity, by means of direct or indirect communication, to create or dispel the notion that Traugh was acting on Southern Wrecker's behalf.

Rather than being analogous to cases in which a question of fact was created as to the issue of apparent authority by evidence of the principal's actions, the court finds this case to be more analogous to cases in which the only evidence provided indicated that a purported agent acted on his or her own, and there was no evidence from which to conclude that the principal authorized or acquiesced in these actions. *See e.g., Northington v. Dairyland Ins. Co.,* 445 So.2d 283

(Ala.1984)(summary judgment granted where there was no evidence that insurance company indicated to the plaintiff or led her to believe that agent had authority to act for the company in the manner in which he acted); *see also Taylor v. Armiger Body Shop,* 40 Del.Ch. 22, 172 A.2d 572 (1961)(holding that there were no facts to show that the defendant held out the purported agent as having authority to sell a vehicle which was in the possession of the purported agent). Therefore, this court finds that there has not been enough evidence presented to create a jury question as to whether Southern Wrecker created the impression, either by action or omission, that it allowed Traugh to act on its behalf. Because the misrepresentations upon which Glass seeks to bring his claim were made by Traugh, and not by Southern Wrecker, summary judgment is due to be granted as to the fraudulent misrepresentation claim.

## V. CONCLUSION

For the reasons discussed, the court concludes that the defendant's Motion for Summary Judgment is due to be GRANTED. A separate order will be entered in accordance with this Memorandum Opinion.